ADDISON Q. FISHER *vs.* BENJAMIN BROWN & others.

A broker who buys stock on an order from another broker, knowing or having reason to know that this broker is acting as agent only, and the purchase is in fact made for an unnamed principal, has no right, in consequence of the omission to name the principal, to presume that he has authorized the agent to pledge the stock for his own debt; and cannot hold the stock by virtue of such a pledge unauthorized or unratified by the principal.

A., holding stock of B. as collateral security for a debt of B. to him, sold the stock without authority and appropriated the proceeds to his own use. B. then demanded the stock, and offered to pay his debt, but did not tender any money. A., without objecting that money was not tendered, refused the demand, on the pretence that he had a right to hold the stock in pledge for the debt of a third person. *Held,* that B. might recover from A. the market value of the stock on the day of the demand, with interest, less the amount of his debt, without any further demand or tender.

CONTRACT for the value of 250 shares of stock in the Boston Water Power Company, alleged to have been bought by the defendants, who were brokers in Boston, for the plaintiff, who was an inhabitant of Providence in Rhode Island, and who paid the defendants for the shares, but to whom they refused to deliver them on demand.

At the trial, before *Gray*, J., without a jury, the plaintiff introduced evidence tending to show that on July 26, 1866, he employed Henry C. Whittaker, a broker in Providence, to procure the purchase of 500 shares of the stock for him, and Whittaker the same day gave the defendants by telegraph and letter an order to make the purchase ; that the defendants bought 200 shares for cash, and 50 shares on a ten days' buyer's option, and on July 26 and August 6 respectively drew on Whittaker for the cost of them, which Whittaker paid (the plaintiff reimbursing it) and left the stock in their hands; that the other 250 shares were bought by the defendants on a thirty days' buyer's option ; that of these, before the end of the thirty days, on orders received through Whittaker, they called in and paid for 150 shares, a certificate for 50 of which they sent to Whittaker (the plaintiff having reimbursed their cost) and sold 100 at a loss of $661 ; that three days after maturity of the option on the other 100 shares the defendants took and paid for them, and after-

wards tendered them to Whittaker, who declined the tender, he having notified the defendants, before they took them, that his principal was unwilling to accept them by reason of their non-delivery within the term of the option ; and that on September 26 the plaintiff came to Boston and made demand on the defendants for the 250 shares which were paid for on July 26 and August 6, and offered to pay the loss on the 100 shares sold, but the defendants refused to deliver the 250 shares to him, denied any knowledge of him in the transaction, and claimed a right to hold them as security for sums owing to themselves from Whittaker on account of purchases of other stocks. The other material facts appear in the opinion.

The defendants offered to show the state of their account with Whittaker on September 26; that he was then greatly in debt to them on account of these other purchases; and that they made them relying on the 250 shares of Water Power Company stock for security. But the judge excluded the evidence; and ruled and found that the plaintiff was entitled to recover the market value of the shares on September 26, the date of his demand for them, with interest from that date, deducting the loss on the 100 shares sold ; and reported the case to the full court, to be sent to an assessor to fix damages, if the ruling was correct; otherwise, a new trial to be granted.

*H. C. Hutchins,* for the defendants.

*G. O. Shattuck & W. A. Munroe,* for the plaintiff.

COLT, J. The plaintiff employed a broker in Providence to order the purchase for him of certain shares of stock in Boston, part to be bought for cash, and part on time at the buyer's option. The order was transmitted to the defendants by letter, which, though it contained no information that the purchase was for the plaintiff by name, yet plainly disclosed that the broker in Providence was acting only as agent, and that the purchase was to be made for the account of a third person. The defendants were therein told that another order might be given on the next day, " if the parties so decided ; " and that the cash stock then ordered would probably be left in their hands " as margin for our buyer." The stock was in fact left in the defend-

ants' hands according to this suggestion. Trial by jury was waived; and the court must have found, as matter of fact, that the defendants knew, or had the means of knowing, that their correspondent was acting only as agent, and that the stock belonged to his principal. Under such a state of facts, the defendants cannot hold the stock, or its proceeds, to secure the payment of a balance due them from the Providence broker.

The defendants rely upon the familiar doctrine which protects a party in transactions had in good faith with one who is acting in his own name, but who it afterwards appears was in fact the agent of an undisclosed principal. In such case, it is said, when sued, he is to be placed in the same situation, at the time of the disclosure of the real principal, as if the agent had been in fact the real contracting party. But this rule is not applicable to the facts of this case. Here there was an unnamed, not an undisclosed, principal, in the sense of the rule. The defendants knew, or had reason to know, that this stock, when bought, belonged to another party, and they had no reason to suppose that he was willing to have it used to pay the debts of his agent and broker. They could not, in good faith, so apply it. And it was wholly immaterial that they were not informed who the real owner was. It was subject to a trust in their hands, upon these facts.

The case of *Shaw* v. *Spencer*, 100 Mass. 382, is in point. It was there held, that, if a certificate of stock issued in the name of " A. B., trustee," is by him pledged to secure his own debt, the pledgee is by the terms of the certificate put upon his inquiry, and *primâ facie* there is no right to pledge it. It was said that the effect of the word " trustee," in the certificate, was the same as if it had been " A. B., trustee for C. D:" " It means trustee for some one whose name is undisclosed; and there is no greater reason for assuming that a trustee is authorized to pledge for his own debt the property of an unnamed *cestui que trust*, than the property of one whose name is known." See also *Bank of Metropolis* v. *New England Bank*, 6 How. 212 *Brandao* v. *Barnett*, 1 M. & G. 908; 6 M. & G. 630; 12 Cl. & Fin. 78''; *Fish* v. *Kempton*, 7 C. B. 687.

The evidence offered by the defendants was rightly rejected as immaterial in this view of the case.

The court also rightly ruled that the plaintiff was entitled to recover the market value of the shares on the day they were demanded of the defendants, with interest, deducting the loss on the shares which had been sold at a loss in pursuance of orders. At the time the stock was demanded, the plaintiff offered to pay this loss. No objection was made that it was not accompanied with a tender of the money. The defendants refused to accede to the plaintiff's claim, on the ground that they had a right to appropriate the stock to their own debt; and they had in fact already sold it and appropriated the proceeds. There was no need of further tender under these circumstances.

*Case to be referred to an assessor.*