WHEELER vs. PERELES and another, Executors.

PLEDGE: INSURANCE POLICY. *(1) Cancellation of policy held by pledgee, when a conversion. (2) Pledgor not compelled to accept surrendered policy. (3) Tender by pledgor, when unnecessary.*
DAMAGES: *(4) Rule of, for conversion of insurance policy by pledgee.*
APPEAL TO SUPREME COURT. *(5) Record on appeal from order refusing judgment on special verdict.*

1. Their testator, having taken from plaintiff an assignment of a life insurance policy " to hold as security " for a note described in the assignment, de-

fendants afterwards, without plaintiff's consent, caused it to be canceled by the insurer, and a new policy issued in its stead. *Held*, that the original policy was by law canceled, and defendants' act was a conversion.

2. After the commencement, and before the trial, of this action for such conversion, defendants, upon surrender of the substitute, received back from the insurer the original policy. *Held*, that the question whether such policy is now in force, cannot properly be determined in an action to which the insurer is not a party, and plaintiff will not be compelled to accept it, even in mitigation of damages.

3. Defendants, having wrongfully converted the policy, must be presumed to have in their possession its market value, in cash or its equivalent; and, this being more than sufficient to pay plaintiff's note, no tender by him was necessary before bringing this action.

4. The value of the original policy, and plaintiff's special damages from the conversion, being found, the difference between the aggregate amount of these, and the amount due on his note, is the proper measure of his recovery.

5. On appeal from an order denying appellant's motion for judgment in his favor upon a special verdict, the question whether the verdict was supported by the evidence, does not arise, but only the question whether, upon the facts found by such verdict, the appellant was entitled to judgment; and a bill of exceptions settled after the making of the order, and showing the evidence, is not properly a part of the record on such appeal.

APPEAL from the County Court of *Milwaukee* County.

Action against the executors of Herman L. Page, deceased, to recover damages sustained by an alleged conversion by them of a policy of insurance upon plaintiff's life, which had been pledged by plaintiff to Page as collateral security for a loan. The case was before this court upon a former appeal from a judgment of nonsuit, which was reversed, and a new trial ordered. See 40 Wis., 424. The policy in question was assigned by *Wheeler* to Page by the following instrument:

" MILWAUKEE, *March 15, 1872.*

" In consideration of the sum of $1,325.77, to me in hand paid, I do hereby assign and set over to Herman L. Page, of Milwaukee, all my right, title and interest in and to the policy hereto attached, being for $10,000, on my own life, issued by

the Connecticut Mutual Life Insurance Company, No. 36,395, to have and to hold as security to a certain note made by me to said Page and dated March 15, 1872, for $1,325.77, together with the interest and costs, if any, thereon till time of payment.                                    R. Wheeler. [Seal.]"

The defendant *Pereles*, as executor of Page, executed to the Connecticut Mutual Company, the following release:

"Milwaukee, Wis., *Feb. 18, 1874.*

"In consideration of a paid up policy or cash value, I hereby release and quitclaim the within policy, No. 36,395, to the Connecticut Mutual Life Insurance Company, and surrender the same to said company.            Nathan Pereles,

*"Executor of H. L. Page."*

The Connecticut Mutual Company thereupon issued a full paid policy in lieu of the original, which paid policy was received by defendants, but afterwards returned by them to the company; and defendants then received back the original policy from the company.    The company wrote defendant *Pereles*, acknowledging the return of the paid up policy, and adding: "We have this day reinstated said policy (the original) upon our books, upon the terms and conditions existing when surrender was made, and herewith inclose the same to you, having canceled the paid policy which was issued.    The assignment to Mr. Page, and receipt for premium paid, are also inclosed."

Upon the second trial, the jury found a special verdict, which is fully stated in the opinion of the court.    Plaintiff's motion for judgment upon the special verdict was denied, and on defendants' motion an order was made that they have leave to tender the policy in open court; that, upon payment of $2,820.67 (the amount found by the verdict to be due upon plaintiff's notes secured by the pledge of the policy), less the sum of $150, special damages, with costs, plaintiff should be entitled to the policy; and that, in default of such payment by plaintiff within forty days, defendants might pay

into court said sum of $150 and costs, and the suit be dismissed. Plaintiff took separate appeals from the order denying his motion and that granting the motion of defendants.

*J. J. Orton,* for the appellant:

The undisputed facts show an actual conversion. 1 Whart. Law Dic., 210; 2 Kent's Com., 577; Bacon's Abr., "Trover" and "Conversion." There can be no return of the policy, since it can not be returned in the condition in which it was pledged. There is no such policy. *Campbell v. Parker,* 9 Bosw., 322; Kerr on Frauds, 155. Misappropriation or sale of a pledge destroys the lien. The pledgor is not bound to receive back the pledge after it has been converted. *Livermore v. Northrup,* 44 N. Y., 107. When a pledgor has placed the pledge beyond his possession and power, no demand, and no tender of payment, is necessary before suit. 40 Wis., 424; *Whitaker v. Sumner,* 20 Pick., 399, 406; *Dykers v. Allen,* 7 Hill, 498; *Rawson v. Johnson,* 1 East, 203; *Judah v. Kemp,* 2 Johns. Cas., 411. The notes cut no figure in the case, not having been pleaded by way of offset, recoupment or counterclaim. 1 Van Santv. Pl., 275. Plaintiff is therefore entitled to judgment for the full value of the policy and his special damages from its conversion.

For the respondents, a brief was filed by *Finches, Lynde & Miller,* and there was oral argument by *H. M. Finch:*

1. There could be no legal cancellation of the policy without plaintiff's consent, since the assignment to Page was not an absolute one, and plaintiff still retained an equitable interest in the policy. If *Pereles* and the company, without plaintiff's consent, could cancel the policy, they could also annul the cancellation. But one party to an insurance policy cannot rescind it. *Brooklyn Ins. Co. v. Bledsoe,* 52 Ala., 550. And a cancellation by mistake, as in this case, cannot affect the rights of the parties. *Master v. Miller,* 1 Smith's L. C. (7th Am. ed.), Pt. II, 1277. 2. Plaintiff could not maintain trover for a conversion of the policy until he had paid or ten-

dered the full amount due on his notes, since he could have no right of possession until then. *Alexander v. Rundle*, 75 Ill., 85; *Bloxam v. Sanders*, 4 Barn. & Cress., 942; *Halliday v. Holgate*, L. R., 3 Exch., 299; *Talty v. F. L. & T. Co.*, 3 Otto, 321; *Lewis v. Mott*, 36 N. Y., 401; *Rose v. Tolly*, 15 Wis., 445; *Fraker v. Reeve*, 36 id., 85. 3. The court has power in a trover suit to order a return of choses in action. *R. & W. R'y Co. v. Bank*, 32 Vt., 639.

### OPINION ON FIRST APPEAL.

COLE, J. This case has been once before this court, and will be found in 40 Wis., 424. It was then decided that an action for a wrongful conversion of the policy could be maintained, Mr. Justice LYON remarking in the opinion, that if the defendants " surrendered the policy for cancellation to the company which issued it, and the same was in law canceled, that is a conversion, no matter what they received in return for it." On the second trial there was a special verdict. The plaintiff moved for judgment on the special verdict, which motion was denied by the county court, and from that order this appeal was brought. The question presented therefore is, whether, upon the facts found, the plaintiff was entitled to judgment for any amount. No other question need be considered, it being conceded that the complaint is sufficient to sustain any judgment to which the plaintiff is entitled.

The jury found that the plaintiff executed and delivered to the deceased, H. L. Page, the two notes read in evidence, and, as collateral security, executed and delivered to said Page the assignment of the policy and the policy itself; that these papers came to the hands of the defendants as part of the assets of the estate of Page; that the defendants sent the policy to the local agent in Milwaukee to be forwarded to the home office for a full paid up policy; that the home office returned in lieu of this policy one for $6,566 and odd cents; that the defendants afterwards returned to the home office this last policy,

and received back the original policy, which they had in their possession and under their control at the time of the trial; and that the original policy was out of their possession from February 18, 1874, until November 29, 1875, after this suit was commenced.

Upon these facts the question arises, whether there was not a surrender and cancellation of the policy; in other words, whether there was not a wrongful conversion of it by the defendants. It seems to us plain that there was. The policy was surely surrendered to the company by the defendants having the possession and the legal title to it, and it was canceled or annulled by the company. The policy as a binding contract was extinguished, so far as it was within the power of the parties to extinguish it. The jury found that there was no mistake in sending the policy to the home office to be canceled; and we must presume that the parties intended to do in respect to it what they did. We are at a loss, then, to understand upon what ground it can be claimed that these acts of surrender and cancellation did not affect the policy, but that it continued in force as a contract.

But the learned counsel for the defendant insists that there was no conversion of the policy, if there was no legal cancellation of it; and he says there could not be a legal cancellation of the interest of the plaintiff in it without his consent. This argument is unsound in the view in which it is pressed. It may be that the surrender and cancellation of the policy was wrongful, in violation of the rights of the plaintiff. Indeed, he claims that it was, and has brought this action for the damages he sustained by these unlawful acts. But can it with any reason be said that the validity of the policy was unaffected by the surrender and cancellation—that it continued in force? By the assignment, the plaintiff set over to Page all his "right, title and interest in and to the policy," to hold as security for the payment of the debts mentioned. He transferred the policy to Page, clothing him with the legal

title.   The defendants succeeded to that title, under the will. It was the ordinary case of a pledge, where the legal title to the pledge vests in the pledgee.   It is true, the plaintiff had the right to pay at maturity the debts for which the policy was pledged, and recover the instrument.   Notwithstanding this, the legal title of the pledge was transferred by the assignment.   For the law is well settled by numerous authorities, that, in case of a strict pledge, the pledgee may sell, without judicial process, upon giving notice to the debtor to redeem, or he may sell or assign his interest by way of pledge to another person, without destroying or invalidating his security. In addition to the authorities cited by counsel on both sides on their briefs, as to the rights of the pledgee over the pledge, see *Stevens v. Hurlbut Bank*, 31 Conn., 146; *Davis v. Funk*, 39 Pa. St., 243; *Milliken v. Dehon*, 10 Bosw., 325; *Brass v. Worth*, 40 Barb., 648.   Of course the rule that the pledgee may sell the pledge upon notice, necessarily implies that he has the legal title and can transfer it to the purchaser.   If he sells the pledge tortiously, that is deemed a conversion.   See authorities *supra*.   So, in any view, our conclusion is, that the defendants, having possession of the policy pledged to secure the notes, neglected to keep it for that purpose, but wrongfully surrendered it to the company for cancellation, whereby the plaintiff lost it.   That is, the facts show that the policy "was in law canceled," which amounted to a technical conversion.   But the same counsel insists that if the defendants and the company, without the plaintiff's consent, could cancel the policy, the same parties could legally annul the cancellation and restore it as a binding contract, and that the facts show that this was done.   It is a very grave question whether the original policy has been or could be restored. But we shall not enter upon an examination of that point; for if there was a conversion of it, the plaintiff is entitled to recover damages therefor.   It is obvious it would be very unjust to compel the plaintiff to receive back the original policy,

and leave all questions as to its validity to be settled in an action brought upon it by his personal representatives after his death. For in such an action the company might possibly defeat a recovery on the policy, on the ground that it had been canceled at the request of the defendants.

It is further claimed that the action cannot be maintained, unless the plaintiff first pay, or make a tender of, the amount due on the notes. But if the defendants have wrongfully converted the policy, presumably they have in their possession its market value in cash or its equivalent, more than sufficient to satisfy the debt. Under these circumstances no tender was necessary.

This brings us to the question as to the amount the plaintiff was entitled to recover on the special verdict. It appears from the verdict that the amount due on the notes, with interest, January 5, 1877, was $2,820.67; that the market value of the policy was $4,908; and that the plaintiff has sustained special damages by reason of the conversion, of $150. We think the plaintiff is entitled to judgment on the special verdict for the difference between the amount of his special damages increased by the market value of the policy, as found by the jury, and the amount due on the notes. This is all the real damage he has sustained by the wrongful act of the defendants.

It was argued by the learned counsel for the plaintiff, that judgment should be rendered for the market value of the policy without reference to the debt. But we are unable to see any reason or principle of law which entitles the plaintiff to such a judgment. He surely had no right to the policy, or its proceeds, without paying the notes for which it was pledged. The surrender and cancellation of the policy being wrongful, the plaintiff is entitled to compensation only to the extent of his injury. This proposition would seem very plain. See *Halliday v. Holgate*, L. R., 3 Ex., 299; *Fisher v. Brown*, 104 Mass., 259. The motion for judgment upon the special

verdict, therefore, should have been allowed for the amount above indicated.

*By the Court.* — The order of the county court is reversed, and the cause remanded for further proceedings in accordance with this opinion.

#### OPINION ON SECOND APPEAL.

In this case an order was entered subsequent to the one we have been considering, giving the defendants leave to return the original policy to the plaintiff upon his paying the amount due on the notes less the sum of $150 special damages. An appeal was taken from that order by the plaintiff, and, by stipulation, both appeals were heard together. The views which we have expressed on the above appeal are decisive of the second appeal. If it was competent for the county court in a proper case to order a return of the property in mitigation of damages, for obvious reasons it should not be done here, where there has been a surrender and cancellation of the policy. Whether the policy has any validity whatever as a contract, is a question which can only be determined in an action to which the company is a party. The case of *R. & W. R. R. Co. v. Bank of Middlebury*, 32 Vt., 639, is not in point. Nothing had been done there by the pledgee affecting the validity of the bonds pledged, and it might have been a proper exercise of power to permit the return of the bonds in mitigation of damages. But the cases are not analogous in their circumstances, and the rule applied in the one should not be followed in the other.

*By the Court.* — The order of the county court is reversed, and the cause remanded.

On a motion by the respondents for a rehearing, their counsel contended, 1. That the court below did not err in denying plaintiff's motion for judgment on the special verdict, if that verdict was unsupported by the evidence, since in that case

the court would be bound, upon a motion for that purpose by defendants, to set aside the verdict; and that, in fact, the verdict was plainly, directly and palpably contrary to the evidence. 2. That the facts found by the special verdict do not show that the first policy is not now, in virtue of the acts of the insurance company subsequent to the alleged cancellation, a val-. id policy, binding the company; and that, if it be so, the judgment asked by the plaintiffs was properly refused by the county court. 3. That upon the facts found it was impossible for the insurance company to make a legal cancellation of the first policy, binding upon the plaintiff without his assent. *Duncan v. Jaudon*, 15 Wall., 165; *Fisher v. Brown*, 104 Mass., 261; *Shaw v. Spencer*, 100 id., 382; *Winslow v. Crowell*, 32 Wis., 639; *Bleddoe v. Ins. Co.*, 52 Ala., 550: *Wilkins v. Tobacco Ins. Co.*, 6 Ins. Law J., 909; *Chase v. Ins. Co.*, Ch. Leg. News of March 2, 1878; *Bassett v. Hughes*, *ante*, p. 319.

Cole, J. We differ very widely from the learned counsel for the defendants as to the questions arising on this appeal which can be considered. And it seems necessary to remind him that this is not an appeal from an order denying a motion to set aside the verdict and grant a new trial on the ground that the special finding " is plainly, directly and palpably contrary to and against the evidence " in the cause. If the appeal were from such an order, much of the elaborate argument filed in support of the motion for a rehearing would be pertinent, because the court could then look into the bill of exceptions to see if the special verdict was warranted or supported by the evidence. But this is an appeal from an order denying the plaintiff's motion for judgment on the special verdict. Now, what question is raised on an appeal from such an order? Manifestly nothing more than this: Was the plaintiff, upon the facts found in the special verdict, entitled to judgment for any amount, and, if so, for how much? It is plain

we cannot review the evidence, nor go behind the verdict, but must accept the finding as conclusive upon all questions of fact. The bill of exceptions which has been transmitted with the papers on the appeal, really forms no part of the record, for it could not have been used on the hearing of the motion, since it was settled and signed about two and a half months after the motion was decided. It consequently performs no office in the case, and should not have been returned on the appeal. The pleadings were properly before the court, and must be regarded in considering the motion for judgment on the special verdict. But both sides practically accepted the special finding as correct; that is, neither side took any legal steps to set the verdict aside, so far as the record on this appeal disclcoses. It was therefore said in the above opinion, and the remark is reiterated, that the only question legitimately before the court on this appeal is, whether, upon the facts found, the plaintiff was entitled to judgment for any amount. We cannot review the evidence, nor inquire whether the verdict is directly and palpably contrary to the undisputed facts established by the testimony. It seems difficult to make this point of practice more obvious by any multiplication of words.

Then, does the special verdict show a conversion of the original policy by the defendants? We are quite clear that it does, and have so held. It is not necessary to go over the argument on that point, but we will remark that the finding shows that the original policy was surrendered by the defendants, who had the legal title, and was canceled by the company. It is true, the jury find that the original policy does not bear upon its face any evidence that it was canceled; that is, the word "canceled" is not written on the face of the policy. But nevertheless the finding does show that the policy was in fact canceled; in other words, it was extinguished and destroyed as a contract. If this does not show a conversion of the instrument, it would be difficult to say what would consti-

tute a conversion of it. But the learned counsel says the policy never was extinguished and destroyed as a contract, but remained in force notwithstanding what was done with it. To test the soundness of this position, suppose the plaintiff had died, and an action had been brought on the original policy December 21, 1874, the day this suit was commenced. Does the counsel suppose there could have been a recovery on the original policy? Or suppose that the plaintiff had died, and an action had been brought December 21, 1874, by the defendant *Pereles*, on the paid up policy issued to him for $6,566 and odd cents, could that action have been defeated, under the circumstances, by the company showing that the original policy was still in force and binding as a contract? We apprehend not. These illustrations are sufficient to show that the original policy was canceled and extinguished, and no longer had any validity. An attempt was made, long after this suit was commenced, to revive it and give it vitality, but to no purpose. It was like an effort to renew a note or mortgage which had been once paid and extinguished. See *Spencer v. Fredendall*, 15 Wis., 666.

But the counsel claims that the original policy was surrendered and canceled by mistake. The jury, however, find that it was not sent to the home office by mistake, thus negativing this position.

Without dwelling longer upon the case, we think the motion for a rehearing must be denied.

*By the Court.* — Motion denied.