## CHURCHILL vs. WELSH.

CONVERSION. *(1, 2) Under what circumstances the verdict will be reduced to nominal damages. (3) Whether defendant in trover, not claiming to own the property, can substitute another person as defendant. (4) His right to an action of interpleader; and effect of his failure to take that remedy. (5)* REVERSAL OF JUDGMENT, *in a matter usually discretionary with court below.*

1. It has been an established rule of the English courts for more than a century (adopted to the full extent in the courts of Vermont, and followed in some cases in other states), that in trover the court will, under certain circumstances, permit the defendant to bring the property into court for plaintiff, with costs up to that time, and will then order a stay of proceedings, or permit plaintiff to proceed with the action at the risk of having the costs finally adjudged against him, if he fails to show special damage, beyond the value of the property at the time of its return; or, upon tender of the property after verdict, it will, in a proper case, reduce the verdict to nominal damages.

2. In this case, it appears clearly from the evidence that the notes of a third person running to plaintiff, which he alleges to have been converted by defendant, came to the possession of defendant either as agent for the plaintiff solely, or (as defendant himself claims) as custodian for both plaintiff and the maker; that defendant never claimed to own or have any interest in them; that he offered, before suit, to surrender them if both parties would agree to the surrender; that immediately after suit brought, he offered to bring them into court, and asked to be relieved from all further responsibility in relation to them; and that he acted in good faith, believing that he had no right to surrender the notes to defendant without the consent of the maker; and it does not appear that plaintiff suffered any special damage from defendant's refusal to deliver them. After verdict against defendant for the full value of the notes, his motion that the verdict be reduced to nominal damages, and the clerk ordered to deliver the notes to plaintiff, having been denied, a judg-

ment entered pursuant to the verdict is reversed on appeal, with directions to enter judgment in plaintiff's favor for nominal damages and costs, upon surrender of the notes to him.

3. The action, being trover instead of replevin, is probably not within the provision of sec. 22, ch. 122, R. S. 1858 (R. S. 1878, sec. 2610), which provides for substituting a third person as defendant, instead of the actual defendant, in actions "upon contract, or for specific, real or personal property," in certain cases there defined.

4. If defendant, before this action was brought, might have maintained a suit to compel plaintiff and the maker of the notes to interplead, still his failure to do so should only subject him to payment of the costs of this action, and loss of the costs which he might have recovered in the action of interpleader.

5. Although this court will not ordinarily reverse the action of the court below on subjects resting in its discretion, yet this rule does not apply where there has been an abuse of discretion, or that court has apparently acted under a mistaken view of the law.

APPEAL from the Circuit Court for *Clark* County.

The case is thus stated by Mr. Justice TAYLOR:

" This action was brought to recover the value of twenty-one promissory notes of one hundred dollars each, given by one T. C. Hartford to the plaintiff, bearing date the 5th day of September, 1877; payable, the first in forty days after date, the second in forty days after the first became due, and the third in forty days after the maturity of the second, and so on, one of said notes maturing at the end of each succeeding forty days after the 5th of September, 1877, with interest at the rate of ten per cent. per annum. The payment of these notes was secured by a chattel mortgage upon a stock of goods owned by the said Hartford, a part of which stock was the consideration for the notes. The notes and chattel mortgage were placed in the hands of the defendant at the time they were executed, with the consent of the plaintiff and the maker.

" The plaintiff claimed that the notes and mortgage were placed in the hands of the defendant with his consent; but he does not explain why they were so placed, except to be held by defendant for collection. After the first note became due,

the plaintiff demanded that defendant deliver the notes to him. This the defendant declined to do, on the ground, as he claimed, that the agreement between the plaintiff and Hartford was, that the notes should remain in the possession of the defendant until certain other debts, which Hartford owed to other parties, were first paid. This action was commenced on the 12th day of February, 1878.

" It is an action to recover damages for the conversion of the notes by the defendant, and the amount of damages claimed is the amount of the face of the notes, and interest at ten per cent.

" The defendant's answer alleges, that for some time previous to the 5th day of September, 1877, the plaintiff and said Hartford had been, and then were, copartners in business; that on that day the plaintiff sold his interest in the partnership business and stock to Hartford, for the sum of $2,100, for which sum the notes in question were given, Hartford agreeing to pay all the debts of the firm, and executing a mortgage on the stock to secure the payment of said notes; that both parties agreed that these notes and the mortgage should be placed in the hands of the defendant; that Hartford should first pay the debts of the firm, and then pay these notes; that defendant was not to deliver any of these notes to the plaintiff, until the partnership debts were all paid; and that at the time of the commencement of this action the partnership debts were not all paid. The defendant denies that he has converted the notes to his own use, and avers that he now has, and ever since their delivery to him has had, the same in his possession, and that he now is, and at all times has been, ready and willing to deliver the same up to whoever may be lawfully entitled thereto.

" The answer then concludes as follows: ' And the defendant, further answering, charges the fact to be, that the said C. F. Hartford, who is not a party to this action, without any request or collusion on the part of this defendant, makes demand of this

defendant, either that he deliver the said notes to him, or that defendant hold the same according to the condition of the agreement in reference to the same hereinbefore stated in this answer; that this defendant is ready and willing to deliver said notes to the clerk of this court, or to any person to whom the court may order the same to be delivered; that this defendant has no interest whatsoever in this controversy, but that the only parties in interest are the said plaintiff and the said C. F. Hartford. Wherefore the defendant asks that the complaint herein be dismissed as against the defendant; that this defendant may be discharged from all liability to the plaintiff, or any party interested in said notes, upon the defendant's depositing the same in court; that the said C. F. Hartford may be substituted as defendant herein, in place of this defendant; and that the defendant may have such other and further relief in the premises as may be just and proper.'

" To this answer the plaintiff filed a reply, denying all the allegations of the same, and especially denying the partnership alleged to have existed between the plaintiff and Hartford. The pleadings were all verified.

" When the cause came on for trial at the circuit, immediately after the jury were sworn, the defendant's counsel produced the notes, and said to the court: ' We have here in court the notes referred to in the complaint, and we wish at this time to deposit them with the clerk of this court, subject to the order and direction of the court;' and at the same time handed the notes to the clerk.

" There was a verdict in favor of the plaintiff for the full sum of $2,100, and interest at ten per cent. from September 5, 1877. Before judgment, the defendant moved the court to reduce the verdict by the amount of the notes, and enter judgment for nominal damages in favor of the plaintiff, and that the notes be ordered to be delivered to the plaintiff. This motion was denied.

" The defendant also moved, on the minutes of the court, to

set aside the verdict, on the grounds that it was contrary to law and against the evidence; that the court erred in its charge to the jury in the several matters excepted to by the defendant; and that the damages were excessive. This motion was also overruled."

Judgment was entered for the full amount of the verdict; and defendant appealed.

The cause was submitted for the appellant on briefs of *Mac-Bride & Grundy* and *J. R. Sturdevant.* They contended, among other things, that defendant should have been permitted to return the property to the plaintiff in mitigation of damages, and, as no special damages had been proven, judgment should have been directed for a nominal amount. Byles on Bills, 6th Am. ed., p. 604, sec. 406; *Alsager v. Close,* 10 M. & W., 576; *Loosemore v. Radford,* 9 id., 657; *Whitten v. Fuller,* 2 W. Bl., 902; 3 Burr., 1364; *Earle v. Holderness,* 4 Bing., 462; *Thayer v. Manley,* 8 Hun, 550; 2 Hill, 132; *R. & W. Railroad Co. v. Bank of Middlebury,* 32 Vt., 639; *Yale v. Saunders,* 16 id., 243; *Hart v. Skinner,* id., 138; Cooley on Torts, 456.

For the respondent, there was a brief by *Ring & Youmans* and *Morrow & Masters,* and oral argument by *Mr. Ring.* They contended, among other things, 1. That it is questionable whether, in an action like this, the court has any power to order a return of the property in mitigation of damages. *Wheeler v. Pereles,* 43 Wis., 332, 338; *Reynolds v. Shuler,* 5 Cow., 323; *Livermore v. Northrup,* 44 N. Y., 107. 2. That if the court has power to make such an order in any case, it must be one in which it affirmatively appears from the undisputed evidence, that plaintiff will be in as favorable a situation after the return, as he would have been if the property had been delivered to him at the time of the demand; and that in this case, not only did that fact not affirmatively appear, but the contrary was apparent. Wherever the power to order a return of the property has been recognized in cases of this kind, it

has been invariably affirmed that the making of the order rests primarily in the discretion of the court, and such discretion ought never to be exercised in favor of a defendant whose acts have been wanton or willful. *Hart v. Skinner*, 16 Vt., 138, opinion of REDFIELD, J., quoting from *Fisher v. Prince*, 3 Burr., 1363. It is well settled that the decision of the court resting on matters in its discretion will not be disturbed, except in cases of a manifest abuse of discretion. Defendant's wanton and willful denial of plaintiff's right, his complete repudiation of accountability and violation of duty to the plaintiff, make this a flagrant and aggravated case of conversion; and the evidence fully justifies the conclusion that there was a deliberate purpose and plan, on the part of the defendant and the maker of the notes, to defraud plaintiff out of the whole amount for which he sold his stock of goods.

TAYLOR, J. The evidence upon the trial was conflicting; and if the number of witnesses was conclusive as to the weight of the evidence, certainly the weight of the evidence was in favor of the theory of the defense, that the notes were to remain in the hands of the defendant, not, as set out in the answer, until the debts of the firm of Churchill & Co. were paid, but until the notes themselves were paid.

The plaintiff denies the alleged partnership, and denies that he agreed that either the firm debts or other debts owing by Hartford should be paid before the notes were paid. He claimed that he wanted the notes placed in the bank for collection, but that the defendant insisted they would be equally safe in his hands, and that he finally left them with him; that when the first became due, he called on defendant, and defendant said it had not been paid, and that there were other debts to be paid; that he afterwards called on the defendant and inquired where the notes were, and that *Welsh* abused him and ordered him off his premises. Soon after, and before the commencement of this action, he demanded the notes of the defendant, and the latter refused to give them up.

The defendant and Hartford, the maker of the notes, and Hartford's brother, testified that the notes were delivered to the defendant with the express agreement that he was to hold them until they were paid by Hartford, and that it was also agreed that the debts owing by Churchill & Co., as well as the old mercantile debts owing by Hartford, were to be paid before these notes should be paid; and they and two or three other witnesses swear to the partnership existing between the plaintiff and Hartford. The evidence also shows that the chattel mortgage was indorsed at the time it was filed in the presence of the plaintiff, " subject to the order of *William Welsh.*"

The evidence also shows that when the plaintiff demanded the notes of the defendant, he replied that he would give them up if both parties agreed to it, but he could not give them up unless both parties should agree thereto.

Notwithstanding the number of witnesses was in favor of the defendant, the jury found for the plaintiff; and this court cannot reverse the judgment, though we might be inclined to think the weight of evidence was in favor of the defendant.

We have noticed this subject of evidence, as bearing upon the question of the good faith of the defendant in refusing to surrender the notes when demanded, which is a matter of great importance in determining the question of the right of the defendant to surrender the notes after suit brought, in mitigation of damages.

As we have concluded that the circuit judge erred in not granting the motion of the defendant to reduce the verdict to merely nominal damages upon the offer of the defendant to surrender the notes to the plaintiff, it will be unnecessary to pass upon the other questions discussed upon the argument of this appeal.

It has been a well established rule in the courts of England for more than a century, that in actions of trover the court will, under certain circumstances, permit the defendant, after

suit brought, to bring the property claimed into court for the defendant, with the costs up to that time, and will then order a stay of proceedings, or permit the plaintiff to proceed with the action at the risk of having the costs finally adjudged against him unless he be able to show that he has been specially damaged by the conversion of the property by the defendant in addition to its value at the time of its return. Or the courts will, in a proper case, after verdict, upon a tender of the property, reduce the verdict to nominal damages.

This rule has been followed in Vermont to its full extent as practiced in the English courts, and has been recognized as a proper exercise of the power of the court in special cases in the courts of Maine, New York, Massachusetts, and other states. The cases in which this rule has been acted upon by the courts, are mostly cases for the conversion of bills, notes, bonds, and other contracts for the payment of money.

The rule was, perhaps, first definitely defined by the court of King's Bench, in 1762, in the case of *Fisher v. Prince,* 3 Burrow, 1364. In that case, Lord MANSFIELD and Justice WILMOT concurred in the following rule: "That where trover is brought for a specific chattel of an ascertained quantity and quality, and unattended with any circumstance that can enhance the damages above the real value, but that its real and ascertained value must be the sole measure of damages, then the specific thing demanded may be brought into court." (Justice WILMOT said "this was the more reasonable, as this action of trover comes in the place of the old action of detinue.") "Where there is an uncertainty either as to the quantity or quality of the thing demanded, or that there is any tort accompanying it, that may enhance the damages above the real value of the thing demanded, and there is no rule whereby to estimate the additional value, then it shall not be brought in. . . . It ought to be done; because at the trial, when the thing remains in the same condition, there generally is a rule ' to deliver it.' An estimated value is a

precarious measure of justice compared with the specific thing."

Previous to this, the decisions of the courts had not been uniform, as will be seen by a reference to the cases of *Harding v. Wilkin*, Sayer's Reports, 120, 27 Geo. II., 1754; and *Calting v. Bowling*, East, 26 Geo. II.; Salk., 597. Since the decision in the case of *Fisher v. Prince*, the practice has been uniform in the English courts. The reasons for the rule, and the considerations which should govern courts in its application, are very briefly but most clearly stated by the learned chief justice in that case. *Pickering v. Truste*, 7 Term, 53; *Brinsden v. Austin*, Tidd's Pr., 571; *Tucker v. Wright*, 3 Bing., 601; *Earle v. Holderness*, 4 Bing., 462; *West v. Taunton*, 6 Bing., 404–408; *Whitten v. Fuller*, 2 W. Bl., 902; *Cooke v. Holgate*, Barnes, 281; *Royden v. Batty*, id., 284; *Moon v. Raphael*, L. J., N. S., C. P., vol. 5, p. 46; *Gibson v. Humphrey*, 1 Crompt. & Mees., 544; *Loosemore v. Radford*, 9 M. & Wels., 657, 659; *Alsager v. Close*, 10 M. & Wels., 576–584; *Cook v. Hartle*, 34 E. C. L., 528; Buller's Nisi Prius, 49 *a*, and notes. These cases show under what circumstances the rule established in *Fisher v. Prince* should be applied.

In the case of *R. R. Co. v. Bank of Middlebury*, 32 Vt., 639, which was an action of trover to recover for the conversion of certain railroad bonds, the court held, after a full discussion of the English authorities, that the rule of the English courts upon this subject was a just rule; and the defendant was permitted to bring the bonds into court, and, in the absence of any evidence showing any special damage beyond the value of the bonds, the court directed a verdict for the plaintiff for nominal damages.

In *Hart v. Skinner*, 16 Vt., 138, the rule was also discussed and recognized, but the right of the defendant to bring the property into court in that case was denied, because the defendant did not bring his case within the rule.

In *Rogers v. Crombie*, 1 Greenl., 274, the rule was recognized, but it was held that it was discretionary with the judge trying the case, whether the defendant should be permitted to surrender the property in mitigation of the damages, and that the supreme court would not reverse the judgment of the trial court upon a question which rested in the discretion of that court.

In *Tracey v. Good*, 1 Clark (Pa.), 472, the court recognized the English rule, but refused to permit the return of the property under the facts of the case. The four cases last cited are the only ones we have been able to find, in which the English authorities upon this question have been considered and acted upon by the courts of this country; but that such right exists in proper cases, is recognized in the following cases: *Shotwell v. Wendover*, 1 Johns. R., 65; *Stevens v. Low*, 2 Hill, 132–134; *Thayer v. Manley*, 8 Hun, 550. The last case was an action by the maker of three promissory notes, to recover damages against the payee for obtaining said notes by fraudulent representations; and it was held that if the defendant returned the notes or destroyed them before the judgment, the plaintiff would only be entitled to judgment for nominal damages. See also Sedgwick on Damages (6th ed.), 614, and note; 2 Wheaton's Selw., 546.

This question was discussed by counsel in the case of *Wheeler v. Pereles*, 43 Wis., 332–340, but was not passed upon by the court. The case of *R. R. Co. v. Bank of Middlebury*, above cited, was referred to in the opinion of the court, with the remark that it was "not in point, and that nothing had been done there by the pledgee affecting the validity of the bonds pledged, and it might have been a proper exercise of power to permit the return of the bonds in mitigation of damages."

The question is an open one in this court; and we are disposed to adopt the rule of the English and Vermont courts, in a case like the one at bar, where the defendant holds the

Churchill vs. Welsh.

property as custodian for the parties in interest, and has never claimed any personal interest in the same, and, if guilty of conversion of the same at all, is simply guilty of a technical conversion through a mistake as to his duty as custodian of the same. It is not a case in which there has been a complete conversion of the property to the use of the defendant, and does not come within the reason of the rule of those cases which hold that, where there has been such a conversion, the defendant cannot mitigate the damages by an offer to return the property. The evidence, we think, clearly establishes the fact that the notes came to the possession of the defendant, either as the agent of the plaintiff solely, or as custodian for both the plaintiff and the maker. It also shows that the de-. fendant made no claim to any ownership of the notes, or to any interest in them; that he offered to surrender them if both parties would agree to the surrender; that, immediately after the action was brought against him, he offered to bring the notes into court, and asked to be relieved of all further responsibility in relation to them; and we think it further shows that his refusal to surrender the notes to the plaintiff, upon his demand, was made in good faith, believing that he had no right to make such surrender without the consent of the maker, Hartford, and that, if he was guilty of any conversion of any of the notes to his own use, it was purely a legal and technical conversion.

We are also unable to perceive that the plaintiff suffered any special damage by the refusal of the defendant to deliver the notes on his demand. If any of the notes were due and payable to the plaintiff, and he desired to enforce the payment of them, the fact that they were in possession of the defendant, he not claiming any interest in them, could not hinder the plaintiff from proceeding to enforce their collection, either by action or upon the chattel mortgage.

We think great injustice will be done to the defendant if this judgment is permitted to stand. If any faith or credit is

to be given to his own testimony, or to the testimony of the two Hartfords, he had at least the right to believe that it was not his duty to surrender the notes to the plaintiff; and although the jury found that he was mistaken in that belief, still, as he, immediately upon being sued, brought the notes into court and asked to be relieved from the further custody of the same, disclaimed all personal interest in them, and stated that his only reason for not delivering them to the plaintiff was, because the other party interested in them insisted that he had no right to deliver them to the plaintiff, it would seem most inequitable that he should be compelled to purchase them at their face value, with ten per cent. interest added, because of his mistaken belief in this particular.

The facts in this case, we think, present a much stronger case in favor of the defendant than the facts in the case of *R. R. Co. v. Bank of Middlebury*, above cited. In that case it was claimed by the plaintiffs, and so the jury found upon the trial, that the bonds held by the defendants were placed in their hands by the plaintiffs under the following circumstances: The plaintiffs were indebted to the defendants for two drafts of $5,000 each, which were past due, and the defendants had commenced suit on the same. The plaintiffs applied to the defendants to discontinue, and renew the discount, and proposed to substitute new drafts for the old, and deposit with the defendants the bonds in question to hold as collateral security for such new drafts. The bonds were delivered to the defendants by the plaintiffs upon this understanding on the part of the plaintiffs; the new drafts were also sent to them, but the defendants refused to take the new drafts or surrender the old ones, and also refused to discontinue the suits upon the old drafts. The plaintiffs demanded a return of the bonds; the defendants refused to surrender the same; and thereupon the plaintiffs brought action against the defendants for a conversion of the bonds. To the plaintiffs' complaint the defendants at first pleaded the general issue,

and the case was tried, after being continued from the September term, 1855, to the March term, 1857, and a verdict of $9,000 was rendered in favor of the plaintiffs. This verdict was set aside by the defendants, and then, for the first time, the defendants offered to restore the bonds, and pay the costs already accrued; and asked a stay of all further proceedings on the part of the plaintiffs. The court ordered the plaintiffs' costs to be taxed, and that the defendants have leave to bring the bonds into court, together with the amount of the plaintiffs' costs, and that if the plaintiffs would accept the bonds and costs, all further proceedings should be stayed; but if the plaintiffs refused to accept that sum, and should proceed with the trial of the cause, the damages which should be recovered by the plaintiffs, should be subject to be reduced by the amount of the face value of the bonds, including interest; and in case the damages recovered by the plaintiffs should not, after being so reduced, amount to more than nominal damages, the plaintiffs should not recover costs against the defendants incurred subsequent to the delivery and payment into court of the bonds and costs, and the defendants should recover their costs incurred during the same term. The plaintiffs refused to accept the bonds and costs, and the cause was continued from term to term, and finally again tried in September, 1859. Upon this trial, the defendants conceded that, upon the whole evidence, the plaintiffs were entitled to recover, but that their right to recover was limited to the value of the bonds, and, these having been surrendered, they could, under the order of the court, recover only nominal damages. The court so decided, and the supreme court sustained the decision.

The excuse given by the defendants on the trial for not surrendering the bonds upon the demand of the plaintiffs, was, that they supposed the bonds were deposited with them as collateral security for their claims against the plaintiffs then overdue. And upon the trial they gave evidence tending to show

that they acted in good faith in this respect, although they were mistaken as to the fact. All the supreme court say upon this question, in its decision, is this: "In the present case, it appears that the bonds sued for came lawfully into the possession of the defendants, *and were held under a claim of right*, in respect to which we do not discover any lack of good faith. So far, then, the case is not outside the rules of law."

ΓIn the case at bar, the defendant, who seeks to surrender the notes sued for, makes no personal claim of interest in the same; he confessedly holds them as custodian, without claim of title except to the possession. He claims and shows that the parties who placed them in his hands, disagree as to the purposes for which they were placed in his custody. When they are demanded of him by the plaintiff, he offers to surrender them if the parties who placed them in his hands will agree to whom they shall be surrendered. Upon being sued for their conversion, he promptly brings them into court, alleges that the conflicting claims of the parties render him unable to comply with the demand of the plaintiff, offers to put them into the custody of the court, and asks the court to make the other party in interest a party to the action, and that he be discharged from further litigation in the matter. When this is denied, no unreasonable delay is asked by the defendant, but the action is promptly brought to trial; when the jury have decided that he was mistaken as to the purposes for which they were placed in his hands, he immediately asks that he may be permitted to surrender them to the plaintiff in mitigation of damages. Upon the trial, he gives abundant evidence showing that the claim he made for not delivering the notes to the plaintiff was made in good faith.

If any defendant who is sued for a conversion of personal property, can be allowed to surrender the property after action brought, this defendant ought to be permitted to do so. As there is no claim made in the plaintiff's complaint that he has suffered any special damages by reason of defendant's refusal

to deliver the notes when demanded, nor that there was any depreciation in the value of the notes between the time of their alleged conversion by the defendant and the commencement of this action, or the time of trial, the return of the notes to the plaintiff would have placed him in as good a position, so far as the evidence on the trial and the verdict of the jury discloses, as though there never had been any technical conversion by the defendant. No injustice would be done by their return to the plaintiff and permitting him to take judgment for nominal damages and costs; whereas great injustice will be done to the defendant by compelling him to pay presently, in cash, a very large sum of money for notes, many of which will not become due for a year or more, and whose real value is a matter of the greatest uncertainty, because he made an honest mistake as to his duty as custodian of them.

It is probable that the defendant did not bring his case, by his answer, within the letter of that part of sec. 22, ch. 122, R. S. 1858, now sec. 2610, R. S. 1878, which provides that "a defendant against whom an action is pending upon contract, *or for specific real or personal property*, may, at any time before answer, upon affidavit that a person not a party to the action, and without collusion with him, makes against him a demand for the same debt or property, upon due notice to such person and the adverse party, apply to the court for an order to substitute such person in his place, and discharge him from liability to either party, on his depositing in court the amount of the debt, or delivering the property or its face value to such person as the court may direct; and the court may, in its discretion, make the order." But he certainly brought the case within the spirit of the statute; and, had the plaintiff brought an action of replevin for the notes, instead of trover to recover their value, we are inclined to think the court would have been justified in granting his application to be discharged from the action on delivering the notes into court, and in substituting Hartford as the defendant in his stead. See *Schuyler v. Hargous*, 3 Robt., 673; *McKay v. Draper*, 27 N. Y., 256.

It is probable that the defendant might have relieved him-
self from the difficulty of his position by bringing an action
in the nature of a bill of interpleader against the plaintiff and
Hartford.   That he did not bring such action, is no reason why
he should not have the relief he asks in this, especially if the
facts proved upon the trial would have justified him in bring-
ing such action.   By waiving his right to such action, he sub-
jects himself to the costs of the present action, whereas, if he
had brought and sustained his action of interpleader against
the parties, he might have been entitled to recover his costs
of that action upon bringing the notes into court.

But whether or not, upon the facts proved in this action,
the defendant could have successfully sustained an action in
the nature of a bill of interpleader against the plaintiff and
Hartford, or whether he was entitled to any relief under the
section of the statute above quoted, such facts, in our opinion,
bring him within the spirit of both the relief provided by the
statute and that furnished in an action of interpleader, and
put him, therefore, in the strongest position for demanding of
the court the relief he now asks for.   His case presents the
strongest equity for the application of the rule of the courts
of England and of this country, above cited, which permits
the return of the property in actions of trover, after suit
brought, in mitigation of damages.

It is urged that if this rule is to be adopted at all, it must
be discretionary with the court in which the action is tried,
and, if that court refuses to allow the defendant to return the
property in mitigation of damages, or to make any order upon
the subject, this court cannot review and reverse the action of
such court in a matter resting in its discretion.

Ordinarily this court will not reverse the action of the
court below upon subjects which rest in its discretion.   This
court has, however, frequently held that the courts, in passing
upon matters resting in discretion, must exercise a legal dis-
cretion, and if that discretion is abused, or if the court pro-

ceeds upon a mistaken view of the law, their action will be reviewed and reversed here. *Crebler v. Eidelbush*, 24 Wis., 162; *McLaren v. Kehlor*, 22 Wis., 297; *Moll v. Semler*, 28 Wis., 589; *Rublee v. Tibbetts*, 26 Wis., 399; *Jones v. Evans*, 28 Wis., 168; *Van Doran v. Armstrong*, id., 236. As the motion of the defendant was a novel one in the courts of this state, we are inclined to think the learned circuit judge below denied the motion upon the supposition that he had no power to grant the relief asked for, under any circumstances, rather than upon the ground that the defendant had not made out a case, which, in his discretion, might entitle him to the relief asked, if, under any circumstances, he had the power to grant the same.

We are of the opinion that the power to grant the relief asked for by the defendant in this case is a power which the courts ought to exercise in proper cases for the promotion of justice and the prevention of harsh and unjust judgments, especially against parties standing in the position of mere custodians making no claim to any interest in the property, except to hold the same for the parties interested, and who, by reason of adverse claims made by such parties, decline to deliver to one of the parties upon demand, when in good faith such declination is based upon a belief that they have no right to make such delivery, and when it does not appear that any injury has been done to the demandant by such refusal, which will not be compensated by a return of the property. The establishment of this rule will be in harmony with the provisions of sec. 2610, R. S. 1878, above cited, with the long established jurisdiction of courts of equity in allowing bills of interpleader, and with the law of this state which authorizes the defendant, in cases of involuntary trespasses, to make a tender of damages before suit, the refusal of which puts the plaintiff in peril of the payment of costs, if in the end he does not recover greater damages than the amount tendered.

For these reasons we hold that the learned circuit judge should have granted the motion of the defendant, and that his

refusal to do so is error, for which the judgment of the circuit court must be reversed.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded with direction to grant the motion of the defendant to reduce the verdict to nominal damages upon his surrendering the notes to the plaintiff, and to enter judgment for the plaintiff for such nominal damages and the costs of the action.