CHARLES H. CARPENTER *vs.* WILLIAM H. DRESSER.

Cumberland. Opinion June 8, 1881.

*Trespass against attaching officer.   Tender of return of property attached.*
*Damages.*

An officer who wrongfully attaches and takes actual possession of goods, cannot show, in an action against him by the owner, that on the day after the attachment he tendered to the owner a return of the property in the same condition as when attached.   He cannot return the property in mitigation of damages for the taking, against the owner's consent.

ON EXCEPTIONS from superior court, Cumberland.

TRESPASS against the sheriff for the act of his deputy in attaching certain oil paintings, frames, silver plated ware, and other articles, on a writ against Morgan and Davenport, who were at the time auctioneers employed by the plaintiff to sell the goods at auction.

The attachment was made while this plaintiff was at tea, on his return he found the goods in charge of the keeper, who refused to allow him any control over the property.   Whereupon he left the premises and did not return.

Other material facts stated in the opinion.

*M. P. Frank* and *N. and H. B. Cleaves*, for the plaintiff, cited: *Neff* v. *Thompson*, 8 Barb. 215 ; 1 Waterman Trespass, § 619 ; *Gibbs* v. *Chase*, 10 Mass. 126.

*Stroul and Holmes*, for the defendant.

At the trial the plaintiff relied upon *Gibbs* v. *Chase*, 10 Mass. 125, and some remarks in that case would seem at first sight to justify the ruling requested by the plaintiff.   SEWALL, J. says : "He who interferes with my goods, and without any delivery [authority?] by me, and, without my consent, undertakes to dispose of them as having the property, general or special, does it at his peril, to answer me the value in trespass or trover, and even a subsequent tender of the goods will not excuse him, if I demand the value."

Now in the first place that case did not call for any such adjudication. No defence was made in that case of return, and no question, not even one of damages, was raised, which could depend upon a return or tender of return. These remarks of Judge SEWALL, were therefore purely *obiter dicta.*

*Stickney* v. *Allen*, 10 Gray, 352, was an action in which return of the property was set up, and the court ruled that it would not affect the damages "if rightly rejected."

It is also said, "Where one has committed a trespass, the party injured is not obliged to take back the property. It would afford an inadequate remedy. The property may have deteriorated. It would not therefore be safe to say that a redelivery of the goods should be taken in discharge of the trespass." It is plain that the court was here considering the question of a return as a defence to the action, which it is not. It is only material upon the question of damages. *Robinson* v. *Mansfield*, 13 Pick. 139.

So in Waterman on Trespass, § 438, it is said: "No tender will at common law either bar an action for a tort, or take away the right to full compensation." But "full compensation" is payment for the loss incurred by the plaintiff, and this is attained, when the trespasser goes off and leaves the property in the place and condition in which it was found by him upon the plaintiff's premises, if the damages caused by the interruption of free use and possession are paid for.

In *Otis* v. *Jones*, 21 Wend. 394, cited in the note to this section, the New York court held that an offer to return after suit could not relieve the defendant from paying the value. This is contrary to the well-established doctrine in our State, and shows that the rule of law in relation to mitigation of damages stands on a different ground from that in Maine and Massachusetts. *Prescott* v. *Wright*, 6 Mass. 20; *Squire* v. *Hollenbeck*, 9 Pick. 551; *Pierce* v. *Benjamin*, 14 Pick. 356; *Higgins* v. *Whiting*, 24 Wend. 379.

Two other cases, in which the doctrine contended for by the plaintiff seems to be held, are based upon *Gibbs* v. *Chase*, as authority. *Connah* v. *Hale*, 23 Wend. 462; *Wooley* v. *Carter*, 7 N. J. L. (2 Halst.) 85.

On the other hand, the Supreme Court of Massachusetts, in a lengthy opinion have said : "Upon the question concerning the amount of damages to be recovered, the court should have adopted the prayer of the defendant, and have instructed the jury that his having given the plaintiff notice . . . that the association had relinquished all claim to the machinery, . . . and the fact that the machinery had never been appropriated to their use, nor moved from the place where it had always been, should be considered in mitigation of damages." *Delano* v. *Curtis*, 7 Allen, 470 ; So as in trover, *Woodbury* v. *Long*, 8 Pick. 543 ; *Wheelock* v. *Wheelwright*, 5 Mass. 104.

The doctrine of the charge in this case is also laid down in Sedgwick on Dam. 689, 690, 691 ; *Brandon* v. *Allen*, 28 La. Ann. 60. An intermeddling with another's property, any tortuous act by one person toward another, cannot exonerate the other from the duty to use ordinary care so as not to further damage himself thereby. *Plummer* v. *Penobscot Lumber Ass'n*, 67 Maine, 363.

PETERS, J. A deputy sheriff wrongfully attached the plaintiff's goods, dispossessing the plaintiff and putting a keeper in charge of his store. On the next day, the deputy tendered to the plaintiff a return of the goods uninjured, and in the same condition as when attached the day before. The plaintiff refused to receive them.

It was ruled, at the trial, that the damages for the attachment and taking, should be limited to any injury necessarily sustained by the plaintiff, by the disturbance of his possession from the date of the attachment to the date of the offered return. This was error. The general rule of damages applies in such case. The plaintiff was entitled to recover what the entire property was worth when it was attached. A return of property in mitigation of damages could not be forced upon the owner against his consent.

When repossession and redelivery are spoken of, in the cases relied upon by the defendant, as going in mitigation of damages, it has reference to a return of the property with the consent of the owner. A person cannot be said to possess, who does not

consent to the possession. Nor can there be a redelivery where there is no acceptance. A mere offer to deliver is not a delivery.

It has been held that an officer, liable as a trespasser for irregularly distraining goods for taxes, may be entitled to have the amount of the taxes deducted from the damages recoverable against him, the taxes being regarded as thus cancelled and paid. It is for the owner's benefit in such case that the tax be regarded as paid. And other cases founded upon the same or a similar principle may be found. But in all of them the doctrine is founded upon the idea, that the deduction or mitigation is allowed with the implied assent of the owner. The case at bar is not such a case.

The case most relied upon, to support the proposition advocated by the defendant, is *Delano* v. *Curtis*, 7 Allen, 470. But in that case a vital element was wanting which is not absent here. In that case, the defendant did not take the property into his own possession, or necessarily exclude the owner from its control. He merely forbade, but did not attempt to prevent, a removal of property which was upon his own premises. The facts are not very fully reported, but *Greenfield Bank* v. *Leavitt*, 17 Pick. 1, is cited in the opinion as its authority, and the latter case decides only, that "if the property for which the action is brought, should be returned to and *received by* the plaintiff, it shall go in mitigation of damages." In *Stickney* v. *Allen*, 10 Gray, 352, the same court refused to apply the doctrine, which the present defendant contends for, to a state of facts calling for its application, if in any case it should be applied, the property taken being certain stereotype plates of peculiar value to the plaintiff, and of very little value to anybody else. But, as PUTNAM, J. said, in *Greenfield Bank* v. *Leavitt*, *supra;* "the certainty of a rule is quite an equivalent for its occasional want of perfect exactness."

The rule asked for by the defendant, would give to the trespasser more power and discretion than courts are accustomed to exercise which order an acceptance of property offered to be returned in mitigation of damages, after a hearing as to its justice and expediency. In such case, by the power of the courts, an owner may have to accept a return of his property; but by

the power of the party he must accept it, if the defendant's theory prevails.

It is true, that such a rule would work well in a few peculiar and exceptional cases. The trouble is, that it would operate unjustly in very many and most cases. A dividing line could not be easily established. The rule would have to apply to all cases where the trespass is not wilful, wanton or malicious. This would give the election to a trespasser to decide how an owner shall be compensated for his trespasses. It would have a tendency to stimulate carelessness and unwarranted experiments in attaching property. It would impose unusual and unreasonable risks and responsibilities upon the owner. He may lose his credit, or be broken up in his business, by an improvident trespasser, and still be obliged to accept his goods again. He may, in the meantime, have got other goods, or gone into other business, and not be favorably situated to take the property back. He must at his peril decide correctly whether the trespass was a wanton or malicious act or not. How is he to ascertain that fact? How may he know whether the property will be returned or not? How long shall he be held in suspense by the wrong-doer? How can he always know whether the property is returned in the same condition as when taken or not? In most cases, his embarrassments would be greater than he could bear. The law does not impose them upon him.

*Exceptions sustained.*

APPLETON, C. J., WALTON, DANFORTH and LIBBEY, JJ., concurred.