## KEITH V. HAGGART.

1. MORTGAGED CHATTELS—LEVY UPON—WITHOUT PAYMENT OR DEPOSIT OF DEBT—OFFICER A TRESPASSER—LEVY ILLEGAL AND VOID.

A sheriff who, under an execution against the mortgagor, levies upon mortgaged chattels without first having paid or tendered the amount of the mortgage debt and interest, or deposited the same with the county treasurer, as required by Sec. 1753, Civil Code, is a trespasser, and such levy is void as against the mortgagee.

2. SAME—MEASURE OF DAMAGES FOR SUCH ILLEGAL LEVY.

In an action by the mortgagee against the sheriff for such unlawful levy and conversion, the measure of damages is the value of the property at the time of the levy, and a fair compensation to the mortgagee for the time and money properly expended in pursuit of the property.

Filed May 26, 1887.

Appeal from the district court of Cass county.

*R. M. Pollock* and *D. H. Twoomey,* for defendant and appellant.

*Wilson, Ball & Wallin,* for respondent.

It certainly does not savor of injustice to require an officer to pay, after he has by an unlawful levy brought on an expen-

sive lawsuit, only the amount which the statute declares he shall pay before the levy is made, viz.: the amount of the mortgage debt. The rule laid down by the trial court is fortified by numerous precedents, some of which are found in the decisions of the supreme court of California. Wood v. Franks, 56 Cal. 217; Berson v. Nunan, 63 Cal. 550; Worthington v. Hanna, 23 Mich. 530; 122 Mass. 303.

TRIPP, C. J. This is an action brought by the plaintiff, John G. Keith, against the defendant, John E. Haggart, by which he seeks to recover for an alleged wrongful levey by the defendant as sheriff of Cass county, upon certain property upon which the plaintiff held a chattel mortgage.

The complaint alleges in substance that theretofore one Donald E. Keith became and was indebted to the plaintiff in the sum of $749.50, evidenced by a certain promissory note made and executed by said Donnald E. Keith, to the plaintiff, bearing interest at ten per cent per annum, dated January 1, 1874, and payable January 1, 1880. That the interest was paid on said note to January 1, 1883, but that there remained due and unpaid on said note, the whole of the principal sum thereof, together with ten per cent interest from January 1, 1883.

That on December 18, 1883, said note being then long past due, said Donald E. Keith, to secure its payment, executed and delivered to the plaintiff the chattel mortgage upon certain of his personal property in said Cass county, which chattel mortgage was duly filed December 21, 1883, and still remained of record unreleased and unsatisfied.

That on the 21st day of August, 1884, the defendant by virtue of a certain writ of execution against the property of said Donald E. Keith without the knowledge or consent of the plaintiff, and without payment, tender or deposit of the amount due on said note and mortgage, did "wrongfully and unlawfully levy upon, seize, take, carry away and dispose of the said mortgaged chattels, and apply the proceeds arising from said disposition thereof, to the satisfaction of said process."

That the value of the property so taken and disposed of,

was of the value of $500, and concludes with a demand of judgment for the amount of $749.50 with interest.

The defendant answered, setting forth in substance that he had no knowledge, etc., sufficient to form a belief as to the making and execution of the note and mortgage; and alleging that as sheriff of Cass county, certain writs of execution against the property of said Donald E. Keith, were placed in his hands for service, and that, by virtue thereof, he levied upon certain property of said Donald E. Keith, naming it, some of which was the same as that described in the complaint, and further alleging that there were two chattel mortgages given by said Donald E. Keith, upon different property to secure the note described in the complaint, and that defendant had levied upon a portion only of the property described in one of the said mortgages, and that the property described in the other mortgage, and the property not levied upon described in this mortgage, were much more than sufficient to pay the mortgage debt.

That said note and mortgages were given to hinder, delay and defraud the creditors of said Donald E. Keith and were void as to the execution creditors.

That the note was barred by the statute of limitations; and concluded with a general denial of all allegations of the complaint not expressly admitted nor denied.

The chattel mortgage which covered the property in controversy, included a span of horses, a gang plow, a sulky plow, two binders, a grindstone, two double wagons, a set of bob sleds, a piano, two stoves, twelve chairs, two beds and bedding and one hay rake; of which the officer levied upon the gang plow, the two binders, the two wagons, the bob sled and the hay rake only; and the defendant offered to prove that the horses, the piano, the beds and bedding and other property enumerated in this mortgage not levied upon, together with the property enumerated and described in the other mortgage, were more than sufficient to pay the mortgage debt and the costs and expenses of foreclosure; but the testimony and offer were refused and rejected by the court as irrelevant and incompetent.

At the close of the testimony the court directed a verdict for the plaintiff in the sum of $937.36, being the amount of the note and interest at the time of the levy and seven per cent interest thereon, from the day of levy to entry of verdict.

No proof was made or offered as to the value of the property levied upon, or of other damages sustained by plaintiff, but the court, by its direction of the verdict, held the measure of damages to be the amount of the mortgage debt at the time of the wrongful levy, with legal interest from that date; this ruling of the court is assigned as error by the defendant, and will be first considered by this court.

The question involved is one of interest to the profession as well as one of importance to suitors and business men in general. Here, admittedly by the complaint, the value of the property converted did not exceed $500; it was alleged to be of that value in the complaint, yet the court directed a verdict for $937.36, the full value of the mortgage debt at the date of the levy, with legal interest thereon to date of trial, leaving the remainder of the mortgaged property which was claimed by defendant to be more than sufficient to pay the entire mortgage debt and costs of foreclosure free from the entire lien of the mortgage.

At common law, chattel mortgaged property could not be levied upon for the reason that the title was in the mortgagee, and a mere equitable interest or right of redemption which was all that remained in the mortgagor, could not be taken and sold on execution. Scott v. Scholey, 8 East 467; Badlam v. Tucker, 1 Pick. 389; Holbrook v. Baker, 5 Me. 309; Marsh v. Lawrence, 4 Cow. 461.

But the statutes of all or nearly all the states have changed this rule, and such property is now generally permitted to be reached by the execution creditor in some manner. In most of the states, equitable as well as legal interests of the debtor in all property, real or personal, are made liable to levy and sale at the instance of the creditor; our own statute is very comprehensive, and has gone as far in this direction as that of any state or territory. Under it, "any interest," in "goods, chat-

tels, moneys or other property both real and personal" and "any interest in real or personal property and all other property not capable of manual delivery, shall be liable to be taken on execution." Sec. 314, Code Civ. Pro.

This statute would have given the officer the right to have sold the mortgagor's equity of redemption or his possessory right where, by the terms of the mortgage the right of possession was to remain in the mortgagor for a definite time. Our legislature did not stop here; however, but as early as 1866, by the adoption of the Civil Code, it placed the mortgage of personal property upon the same level with the mortgage of real property, and gave to both the same status in law that the real estate mortgage had so long held in equity. So that whatever may be the rule elsewhere, in this territory the legal title to real and personal property remains in the mortgagor until foreclosure, and the right of the mortgagee prior to foreclosure is a mere lien upon the mortgaged property. Section 1701, 1706, *et seq.*

If these were the only provisions of the statute there would exist no doubt, but that the sheriff might levy upon and sell any chattel mortgage property subject to the lien of the mortgage, when the right of possession was in the mortgagor; but there is another provision of our statute which reads as follows: "Personal property mortgaged may be taken under attachment or execution issued at the suit of the creditor of a mortgagor. Before the property is so taken, the officer must pay or tender to the mortagee the amount of the mortgage debt and interest, or must deposit the amount thereof with the county treasurer, payable to the order of the mortgagee." Sec. 1753, 1754, Civ. Code.

It is under this section as construed by the supreme court of Cal., that the lower court directed the verdict for the amount of the mortgage debt and interest. The statute as above quoted, is the same as that of California, and was taken from that state, but prior to the decision hereinafter referred to. The case cited and relied upon in the court below, and in this court, is Wood v. Franks, 56 Cal. 217, a department decision decided at

the July term, 1880, by Judges MYRICK, SHARPSTEIN and THORNTON; the opinion is by Mr. Justice MYRICK. So far as the facts appear in the report of the case, Wood was the holder of the chattel mortgage upon certain growing crops, made and executed by one Herron, to secure a note for $1,487.25, and interest, which mortgage was duly recorded. Franks was sheriff, and as such officer, there was placed in his hands for service a writ of attachment against the property of said Heron; and as such sheriff, without paying, tendering, or depositing the amount of the mortgage debt, he seized the mortgaged property under his writ. Wood demanded payment; and payment was refused; he thereupon brought an action to recover the amount due upon the note and mortgage; the defendant demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action; the demurrer was sustained, and plaintiff declining to amend, appealed, and the judgment of the lower court was reversed. The opinion of the court is very brief; after stating the facts as above given, and citing the provisions of their statute, which are the same as ours as to levying upon chattel mortgage property, and the sections upon obligations and the breach thereof, the court determined the case in the following words, which we give entire: "Thus it will be seen, that wherever there is an obligation arising from operation of law, and a branch of that obligation, the party injured may, by action, recover the amount which will compensate him for all the detriment proximately caused by the breach. It will also be seen that the law casts upon an officer the duty or obligation of paying to a mortgagee the amount of the debt due to the mortgage before he, the officer, may take the property. If an officer seizes personal property mortgaged, without paying, tendering, or depositing the amount due, the detriment approximately caused by such seizure, is not the value of the property seized, but the amount of the mortgage debt. The officer is not bound to make the seizure unless the attaching creditor furnish him with the requisite funds to make the payment; a failure to furnish the funds would be a good defense by the officer in a suit against him by the attaching

creditor.   If, however, the officer, waiving his right, to be protected, seizes the property without payment, tender, or deposit, he assumes to make good to the mortgagee the detriment caused by the seizure; and the mortgagee is not left to his action of trover or replevin.   Indeed, it might be that he would not be in a position to maintain either of those actions.   Judgment reversed, and cause remanded, with directions to overrule the demurrer, and that defendant have leave to answer."

The court, it will be perceived, seems to rest its decision upon the ground that the failure to pay the mortgage debt by the officer before levy, was the breach of a legal obligation, and that the detriment proximately caused by such breach was the debt and interest.   With all due respect for that able court, we think the reasoning upon which the decision appears to be based, is fallacious and the conclusion arrived at, is incorrect.

And in our judgment, the learned court erred in holding that the statute imposed upon the officer a legal obligation to pay the mortgage debt before he can make his levy.   Our statute on obligations is the same as that quoted by the California court, and reads as follows:   "An obligation is a legal duty, by which a person is bound to do or not to do a certain thing.  An obligation arises either from (1) the contract of the parties, or (2) the operation of law.  An obligation arising from an obligation of law, may be enforced in the manner provided by law, or by civil action or proceeding."   Sec. 798, 799, Civ. Code.

And the damages for the breach of an obligation is declared to be, "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."   Sec. 1967, Civ. Code.

These statutory provisions contain nothing new.   They are but the enactment of the common law.   An obligation, whether arising from contract or by operation of law, is one binding upon the obliger and one that may be enforced by the

obligee; it does not rest in the option of the actor to perform or to refrain from performing at his own will; it does not depend for its existence upon the happening of a future event, or the event of any contingency. It is an executed, a completed thing having an existence in the present, binding in the present upon the obligor and capable of being enforced by the obligee. Measured by such a standard, what element of an obligation existed up to the time of the levy, upon the officer in the case at bar, to pay, tender or deposit the amount of the mortgage debt? Could the plaintiff, the mortgagee, at any time prior to the levy, have compelled the officer to pay or deposit the amount of his debt? Was there ever a moment of time up to the very act of levy, when the mortgagee could invoke the power of the court to recover the amount of his mortgage debt from his officer? Clearly not. Yet this is the test of an obligation; an obligation which the courts have no power to enforce is not a legal obligation, but a mere duty or a condition attached to or connected with the principal act in controversy. It is not the "legal duty by which the person is bound to do or not to do a certain thing."

And if no legal obligation rested upon the defendant to pay the mortgage debt, prior to the levy, it will hardly be contended that one existed after the levy. Through what sleight of hand in law can an obligation be created and broken by the same identical and instantaneous act? The statute upon which the mortgagee relies for his obligation, read: "Before the property is so taken, the officer must pay," etc. It does not require him to pay after the property is taken.

The trespass or conversion is complete when the wrongful levy has been made and no subsequent act of the officer in paying, tendering or depositing the amount of the mortgage debt, can undo the wrong or fully compensate for the detriment caused by the wrongful act, however it might go in mitigation of damages. The cause of action is complete to the mortgagee when the wrongful act is done; and as the officer cannot plead in defense any subsequent payment or deposit, so is he under no legal obligation to make such tender or deposit.

But it is not contended that the mortgagee has a right to recover, because of a legal obligation resting upon the officer to pay the amount of the mortgage debt after the levy, but the right to recover is based upon the breach of the obligation to pay before the levy. It is conceded that the breach of the obligation is not complete until the act of levy, and that the legal obligation was to pay before and not after the levy.

The California court says: "The law casts upon an officer the duty or obligation of paying to a mortgagee the amount of the debt due the mortgagee before he, the officer may take the property." Just here, in our judgment, is the error of reasoning, into which that court has fallen. Duty and obligation are confounded with legal duty and legal obligation.

We do not desire to trench upon the rules and doctrines of moral science, nor to challenge a discussion with theologians, in defining duty or obligation in a general or moral sense; it is only with legal duty and legal obligation that we have here to do, or as the statute puts it: "The legal duty by which the person is bound to do or not to do a certain thing." Whatever may be the duty or obligation upon the officer to pay or deposit the amount of the mortgage debt before he may levy, it is clear there is no "legal duty" resting upon him to do it, a duty which he is bound to do and which the mortgagee can enforce or oblige him to do. The learned court mistook in what the legal obligation resting upon the officer consisted. It was not in the "omission to pay or deposit the debt due" the mortgagee before levy, but in refraining from levy until he had made such payment or deposit. The legal duty was a negative one; he was under a legal obligation to refrain from levying upon the mortgaged property, until he had performed the condition precedent prescribed by the terms of the statute. The statute is in its nature prohibitory; it imposes terms which must first be complied with, before such levy can be made; and the effect of a non-compliance with the conditions of the statute, is to make the act done without such compliance, illegal and void.

No wrongful act was done by the officer and no legal liability existed against him until he made the levy; and this

wrongful act subjected not only himself but every person whom he called to his assistance to the legal liability of paying all damages approximately caused by such illegal seizure. A'l were alike trespassers, and all or any of them were alike liable for the direct consequesces of their wrongful acts. And will it be contended that those who assisted in the unlawful levy can be mulcted in damages for the entire mortgage debt? And if not, why not? Did they not aid and participate in, and were they not principals in the wrongful act that created the sheriff's legal liability? Does the same illegal act subject co-principals in a trespass to different degrees of punishment, or mulct them by different rules of damage? Is the sheriff in execution of the process of the court in making his levy to be exposed to a greater liability, or be visited with a greater penalty, or 'be subjected to a more oppressive rule of damages than the ordinary trespasser who takes property without color of right?

It may at first thought seem a nicety of reasoning to say that the legal obligation resting upon the officer did not consist in the omission to pay or deposit the amount of the mortgage debt, but did consist in his refraining from levying upon the mortgaged property until such payment or deposit; but it is the consequences resultant that makes the distinction apparent and necessary. The California court starts off upon the premize that the pre-payment is a legal obligation and as a consequence the amount which should have been prepaid is the proximate loss to the mortgagee; whereas if it had correctly held, as we deem the true rule to be, that the legal obligation was not to levy until he had made such payment or deposit the damage would have been the loss sustained by not refrain ing; or, in other words, the damage sustained from the wrongful act of levy. The breach of the legal obligation imposed upon - the officer, not to levy without payment or deposit, is made by the levy; and in this case as in all cases, the damage caused by the breach of the obligation is the measure of the recovery; or as the statute already quoted accurately puts it, "For the breach of the obligation not arising on con-

tract the measure of damages is the amount which will compensate for all the detriment proximately caused thereby.''

The legal obligation imposed upon the officer to refrain from levying upon the mortgaged property was one that could be enforced in the law; it was one of which the courts could and would take judicial cognizance. The court of equity could be appealed to, and a restraining order would issue whenever irreparable damages would be caused by such illegal levy; and courts of law could be appealed to after such levy to recover damages for the unlawful act constituting a breach of such legal obligation. Not so, however, with the legal obligation sought to be set up in this case. Neither a court of law nor of equity could be invoked to restrain action or to recover damages for the breach of such an obligation; for, as we have already said, there never was a time when an officer was legally bound to pay or deposit the mortgage debt. The prepayment or deposit was an option to the officer; and he was required to do one or the other before he could make a lawful levy; it was the condition precedent that made his act of levy legal or illegal; and the mortgagee had no more claim upon the officer in the present action to recover the amount required to be paid than the adjoining land owner would have to recover of his neighbor the costs of a wall or other support made necessary by such neighbor's adjoining excavation. His right of recovery would be measured by the detriment or the injury done to his own land by the wrongful act of his neighbor, and not by the cost of such protection as would have made the excavation lawful; or as will might the land owner adjoining a railroad seek to recover the value of a fence which such company was required by law to erect, prior to the operation of its road, in an action for cattle killed by reason of such failure to fence.

The law imposes upon the officer a condition which he must perform before he can legally act; its performance or non-performance gives to his act of levy a legal or illegal character. The statute does not seek in terms to change the measure or rule of damages; and the court will not seek to give to such statutes a construction contrary to the whole line of judicial de-

cisions, unless the language of the act itself renders such construction imperatively necessary.

It requires no argument to show that the construction of the statute given by the court below would work great hardship and injustice to honest creditors, and would be a premium upon fraudulent transfers and conveyances. The officer in making his levy would be as much bound to pay fraudulent as honest mortgages; and when the mortgaged debt exceeded or equalled the mortgaged property, the hazard incurred would be so great as to deter creditors from making levies upon mortgaged property and undertaking to prove the fraudulent character of the transfer in court. Creditors would be practically remediless; for, if they would have a remedy in equity it would only be after the delay of the recovery of judgment and return of execution, during which time the property would probably be disposed of and become inaccessible to process.

Again, the measure of damages is unreasonable and unconscionable. Damages are allowed as a compensation for the detriment caused by the unlawful act or omission of another. Our statute states the common law rule very clearly and very concisely: "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." Section 1940, Civil Code.

The mortgage debtor in a case like the one at bar is not injured or damaged in the amount of his entire debt. If there was, as is claimed in this case, more than property enough to pay the plaintiff's debt and cause of foreclosure remaining after the levy, he has not been injured in fact at all. It is true that the mortgagee has the right to say what portion of the mortgaged premises he will, or what portion he will not, apply to the discharge of the mortgage debt, (in absence of any other lien thereon); yet he is not injured in any event to an amount greater than the actual value of the property taken and sold. Can it be said that the legislature intended that in case of a two thousand dollar mortgage upon personal property of the value

of two thousand five hundred dollars, when all the mortgaged property has become lost or destroyed except one cow to the value of twenty-five dollars, and the officer levies upon it desiring in good faith to test the validity of the mortgage, that, in case the validity of the mortgage is sustained, he must pay in damages the sum of two thouand dollars and interest?

This is the logical result of the decision in the court below. The officer levied upon a small part of the property; there was more than enough left, it was claimed, to pay the whole debt and costs. The amount of the property taken was not claimed by the plaintiff to exceed five hundred dollars, yet the court mulcted him in the sum of $937.36 and costs.

Can this court give such a construction to this statute as will allow such an unconscionable and grossly oppressive rule of damages? In our judgment, not only does the proper construction of the sections under consideration not warrant it, but we would act in doing so in express violation of our statute which provides; "Damages must, in all cases, be reasonable, and where an obligation of any kind appear to create a right to unconscionable and grossly oppressive damages, contrary to substantial justice, no more than reasonable damages can be recovered." Sec. 1985, Civil Code.

The case at bar may be distinguished from the case of Wood v. Franks, *supra*, and might perhaps bo determined without disapproval of the doctrine announced in that case; but the case being one that involves a question which has been so much discussed in the district courts that we deem it best to examine and pass upon the questions claimed by the lower court to have been decided in that case. It may not, however, be uninteresting to note the distinction between the case of Wood v. Franks and the case at bar. And first it will be noticed that in that case the entire amount of mortgaged property appears to have been taken; and it does not appear but that the property equalled or exceeded the amount of the mortgage debt; while in the case at bar the property levied on was but a small portion of the mortgaged property, and was not, perhaps, of one half the mortgage debt in value. But in the view we

have taken of this case, we will not stop to consider what effect the difference in these facts between the two cases would have upon the case in consideration. It may be remarked, however, in passing, that if the property levied on did exceed the mortgaged debt, there are decisions that hold that the officer in making such levy is not a stranger, and that the mortgagee could not recover a greater sum than the debt due with interest and costs. And it may also be noted that there is a very respectable class of authorities which holds that the officer levying upon mortgaged property is bound to levy upon the entire property; that the mortgaged property, upon principles of public policy, must be regarded as an entirety to prevent its being scattered, and to preserve the identity of the mortgage lien; and that the officer who levies upon a part of the mortgaged property and sells it, is a trespasser, while in other states this rule has been adopted by force of the statute which permits only the equity of redemption to be sold. Jones Chat. Mort. Sec. 562; Manning v. Monaghan, 1 Bosw. 459.

Another and essential distinction between the California case and the one at bar is in the character of the action brought. Wood v. Franks, *supra*, was determined upon demurrer to the complaint; demand was made by the mortgagee for the amount of the mortgage debt; the demand was refused and allegation of such demand and refusal was madd in the complaint; and from some remark of the court in the opinion, we might be led to infer that it was an action in the nature of an assumpsit, an implied promise upon the part of the officer to pay the amount of the mortgage debt. The court gives us to infer that the action was not trover or replevin, for in the opinion already given, it says: "If, however, the officer * * * * seize the property without payment * * * * * he assumes to make good to the mortgagee the detriment caused by the seizure; and the mortgagee is not left to his action of trover or replevin." What there may be in this position of the court, we do not deem it necessary nor care now to discuss; and we have only referred to this case and discussed it so far as it may be deemed to be an action of trover or one to recover for the

the breach of a legal obligation not arising on contract. But whatever may have been the view of the California court in that case, and whether the action was one in the nature of an assumpsit, or sounding in tort as for a breach of a legal obligation, it is evident that the rule adopted in that case was not intended to be, or at least has not been followed, as the exclusive remedy of the mortgagee; for we find in Berson v. Nunan, 63 'Cal. 550, that the mortgagee brought replevin against the officer for levying without payment, tender or deposit of the mortgage debt, and maintained his action upon the ground of an unlawful seizure. The case was heard and determined by the supreme court consisting of the other three judges, none of whom sat in Wood v. Franks, and no reference is made to that case; but the value of the property was found and the damages were measured as in ordinary action of replevin. It is not, however, necessary to examine the case of Wood v. Franks only so far as it may be deemed to be an action for conversion or breach of a legal obligation; for the case at bar does not claim to be other than one for conversion. The language of the complaint already quoted charges that the defendant "did wrongfully and unlawfully levy upon, seize, take, carry away and dispose of the said mortgage chattels, and apply the proceeds arising from said disposition thereof, to the satisfaction of said process." And the plaintiff's attorney in his brief filed in this case characterizes his action as follows: "The levy not being made in pursuance of the statute was unlawful. The mortgage had a choice of remedy, either to replevin the goods or to sue for their conversion. The plaintiff elects to bring his action for damages." Plaintiff's Brief, 6 and 7.

The character of the action being then admitted, our statute has in express terms measured the damages to be recovered: "The detriment caused by the wrongful conversion of personal property is presumed to be: (1) The value of the property at the times of the conversion with interest from that time * * * and (2) a fair compensation for the time and money properly expended in the pursuit of the property." Civ. Code Sec. 1970; Chap. 42, Laws 1885.

"One having a mere lien on personal property cannot recover greater damages for its conversion, from one having a right thereto superior to his, after his lien is discharged, than the amount secured by the lien, and the compensation allowed by Section 1970, for loss of time and expenses." Section 1972, Civil Code.

Counsel for the plaintiff strenuously insist in their brief that the court should not reverse the case and send it back for a new trial upon this ground alone, but they insist that under the pleadings and the facts of this case, the court would be authorized to modify the judgment entered in the court below; and they claim that as the complaint alleges the value of the property to be five hundred dollars, and that as the allegation is only denied by the answer generally, it is a negative pregnant only, and the allegation of value stands admitted. We are aware that such a denial of value has been so held by some courts. Bliss Code Plead. 332; Moulton v. Thompson, 26 Minn. 120.

But it is unnecessary for this court to pass upon this question now, for if the plaintiff is entitled to recover at all, he is entitled to recover not only the value of the property converted with interest, but also, "a fair compensation for the time and money properly expended in pursuit of the property." Section 1970, Civil Code.

This is a branch of the case upon which no proof was offered, and which in no legal manner has been withdrawn from the consideration of the court. The case must therefore be sent back for trial upon all the issues.

There were a large number of other errors assigned by appellants, but as the court are of the opinion that the case must be reversed and sent back for a new trial upon the grounds stated, we have not deemed it necessary to pass upon the other questions raised in the briefs of counsel and urged at the argument.

The judgment of the district court is reversed and a new trial ordered. All the justices concur.

FRANCIS, J. Without adopting all of the reasoning in the foregoing opinion I fully concur in the rule laid down therein, as to the measure of damages and in the result reached.