## WHITTLER v. SHARP, SHERIFF.

No. 2478. Decided August 21, 1913 (135 Pac. 112).

1. SHERIFFS AND CONSTABLES—ACTIONS FOR CONVERSION—EVIDENCE. In an action against a sheriff for converting an automobile on which plaintiff had a chattel mortgage, evidence *held* sufficient to support a finding that the deputy sheriffs were notified that plaintiff had a mortgage thereon when they levied thereon under a writ of attachment. (Page 423.)

2. SHERIFFS AND CONSTABLES—ACTIONS FOR CONVERSION—EVIDENCE. In an action against a sheriff for converting an automobile, upon which plaintiff had a chattel mortgage, by levying thereon under a writ of attachment, evidence that the automobile when levied upon was in the barn of plaintiff's son-in-law, that shortly after the levy, with plaintiff's knowledge, though without his consent and against his protest, it was replaced in such barn, would not support a finding that it was abandoned and not left in the possession of any one. (Pafe 423.)

3. SHERIFFS AND CONSTABLES—ACTION FOR CONVERSION—EVIDENCE. In an action against a sheriff for converting an automobile, upon which plaintiff had a chattel mortgage, by levying thereon under a writ of attachment, evidence *held* insufficient to support a finding that it was returned to the place from which it was taken without plaintiff's knowledge but sufficient to support a finding that he did not demand or consent to its return. (Page 423.)

4. SHERIFFS AND CONSTABLES—WRONGFUL ATTACHMENT—LIABILITY.
Although the statute provides that, before mortgaged property
may be taken on attachment, the officer must pay or tender the
mortgagee the amount of the mortgage debt or deposit the
amount thereof with the county recorder, the taking of the
property without complying therewith does not render the
officer liable to pay the debt but makes him liable in tort for
the damages sustained thereby; the levy being unauthorized
and the seizure a trespass.    (Page 425.)

5. TROVER AND CONVERSION—DAMAGES—VALUE OF PROPERTY. Ordi-
narily in conversion, when the property is not returned, the
value thereof at the time of the conversion is the measure of
damages.    (Page 426.)

6. TROVER AND CONVERSION—MITIGATION OF DAMAGES—RETURN OF
PROPERTY. In an action for conversion, a return of the prop-
erty to plaintiff and an acceptance of it by him may be shown
in mitigation of damages, if the property when returned was
in the same condition as when taken and plaintiff has suffered
no special damages.    (Page 426.)

7. SHERIFFS AND CONSTABLES—CONVERSION—MITIGATION OF DAM-
AGES—RETURN OF PROPERTY. Where a levy on mortgaged per-
sonal property under a writ of attachment without paying or
tendering the mortgage debt, as required by statute, was made
and the property seized in good faith and not oppressively, the
property was unused and stored at the time of the levy, was
retained but five days, and then returned in the same con-
dition as when taken and left in the place from which it was
taken, where it remained subject to the mortgagee's control and
dominion, the mortgagee, in the absence of any proof that he
had sustained any loss, was entitled to recover only nominal
damages, although the mortgagee refused to accept the return
of the property, especially as he could not convey title to the
property to defendant upon satisfaction of a judgment for its
value and did not offer to transfer his lien.    (Page 426.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by J. F. Whittler, against Joseph C. Sharp, Sheriff of Salt Lake County.

Judgment for plaintiff.    Defendant appeals.

REVERSED AND REMANDED.

*Dey, Hoppaugh & Fabian* for appellant.

*C. G. Gatrell* for respondent.

STRAUP, J.

In the complaint it is alleged the plaintiff held a recorded chattel mortgage in the sum of $850 on an automobile of the value of $1000, the property of his son, the mortgagor; that the defendant, the sheriff of Salt Lake County, on a writ of attachment in an action against the son, "seized, took, levied upon, and carried away said automobile and did not then or at any time pay or tender to the plaintiff, or deposit with the county recorder of Salt Lake County, the amount of the mortgage debt or any part thereof," though past due and wholly unpaid; that at the time of the levy the plaintiff notified the sheriff "that said automobile was subject to such chattel mortgage and demanded payment of said mortgage indebtedness upon such seizure, and thereafter in writing demanded from the defendant the payment of such mortgage indebtedness; but the defendant has refused and still refuses to make such payment, by reason of which the plaintiff has been damaged in the sum of $850," for which amount, together with interest and costs, judgment was demanded.

In his answer the defendant admitted the levy and seizure of the automobile on the writ of attachment, denied the plaintiff at that time notified him of the chattel mortgage, averred he then had no knowledge of the mortgage and that shortly thereafter, upon receiving written notice from the plaintiff and learning of the existence of the mortgage, he released the levy and, with the knowledge and consent of the plaintiff, returned the automobile to the place from which it was taken and in the same condition as when it was levied on. Neither the mortgage nor the validity or regularity of the attachment proceedings was disputed or questioned.

The case was tried to the court, who found that at the time of the levy the automobile was not in the possession of the plaintiff; that it was stored in a barn belonging to one Servis, the son-in-law of the plaintiff; that the plaintiff, at the time

of the levy, notified the sheriff "that said automobile was subject to such chattel mortgage and demanded payment of said mortgage indebtedness upon said seizure, and thereafter in writing demanded from the defendant the payment of such mortgage indebtedness, but the defendant has refused and still refuses to make such payment; that five days after such seizure . . . the defendant released said levy and returned said property to the place where it was at the time said levy was made and tendered the same to the plaintiff, which release and return were made without the consent or assistance of the plaintiff, and that the plaintiff then and there refused to release said automobile from the defendant; that the said plaintiff did not at any time demand return of said property nor did he at any time release the same into his possession;" that the defendant, when the levy was made, had no knowledge of the mortgage "except constructive notice imparted by the record and the verbal notice given him by the plaintiff, but shortly after making said levy defendant learned of the record of said chattel mortgage and thereupon, and without the knowledge or consent or assistance of the plaintiff, said automobile was returned to the place from which the same had been taken and there abandoned, not being left in the possession of any one." Upon these findings the court held the plaintiff was entitled to judgment for the value of the automobile, found to be $250, together with interest and costs, and rendered and entered such a judgment, from which the defendant has prosecuted this appeal.

The assignments present questions as to the sufficiency of the evidence especially to support the finding that the automobile was returned "without the knowledge and consent of the plaintiff" and was "abandoned, not being left in the possession of any one," and as to the measure of damages.

In April, 1909, the plaintiff's son purchased a second-hand automobile for the sum of $1000. The plaintiff loaned him $850 for that purpose and took a mortgage on it. It was used as a rent car on the streets until in November of that year, when it was stored in Servis' barn near the plain-

tiff's residence and to which he had free access.
Plaintiff's son thereafter went to California. He 1, 2, 3
wrote his father "to jack up the car and take the air
out of the tires." This was done. On February 4th two
deputy sheriffs made a demand on the plaintiff for the pos-
session of the automobile on a writ of attachment in an ac-
tion against the son. According to the testimony of the
plaintiff and others, he then told them he owned the car;
that he had paid for it; and that he had a mortgage on it.
According to the testimony of the deputies, he did not then
tell them anything about the mortgage but told them he had
loaned his son some money. Before the automobile was
taken from the barn, one of the deputies, at the request of
plaintiff, talked to plaintiff's attorney over the telephone.
The attorney asked him if he did not know there was a
mortgage on the automobile, and the deputy replied that he
did not. After the automobile had been taken from the
barn and the deputies were about to leave with it, Servis
stated to them that he was the owner of the automobile and
threatened to have them arrested. They took the automo-
bile on the writ and placed it in a garage. The next day the
plaintiff's attorney, in writing, notified the sheriff that the
plaintiff held a mortgage on the automobile for the sum of
$850; that the deputies had levied on it and seized it with-
out paying the mortgage indebtedness and demanded $850
of the sheriff, together with interest, the amount of the
mortgage debt. Three or four days after that, the sheriff
released the levy and returned the automobile to the barn
whence it was taken. Here there is again some conflict in
the evidence. The deputy returning the automobile tes-
tified: When he drove up to the barn "I went and found
Mr. Whittler (the plaintiff). He did not live where the
barn is, but he lives a little distance away. I got him and
told him we brought the car back, and he says, 'Well, I told
that other fellow you would have to bring it back;' and he
looked at the machine and went in and opened the doors.
Then, before we done any more, he said, 'I want to telephone
my attorney;' and I said 'All right.' I went with him

across the alley to a house, where he spoke to his attorney over the phone. The attorney told me over the phone (I told him I was there to put the car back), 'Well, if you put it back, you will do it at your own risk.' At that time the doors had been opened, but the car had not been put in the barn." He further testified that the plaintiff assisted him and others in putting the car in the barn, and, after it was placed in position as found, the deputy said to the plaintiff, "Now, is it in as good shape as when it was taken out?" and that he said "Yes, but pump those tires up;" and "We pumped the air in; we then went away and the plaintiff closed the doors from the inside." According to the testimony of the plaintiff, when the deputy and his party brought the car back he said to the deputy, "What are you going to do now?" and the deputy replied, "We have brought the car back;" and that the plaintiff then said: "You can keep it. You took it against my will; now you can keep it. I don't want anything more to do with it." Continuing, the plaintiff testified: "Then he said that he was told to bring it back, and I said, 'Who told you?' and he said, 'Your lawyer;' and I said, 'Just wait a minute.' I then called up my lawyer and asked him, 'Did you tell the sheriff to bring back the automobile?' and he replied that he did not. . . . Then just as they were about to leave I ran out in the street and I said to them, 'I want you to understand distinctly once more before all these gentlemen that I don't accept this car.'" He further testified that, "if I had not consulted my lawyer about it, I would not have had any objection to their putting the car back in the barn." The chauffeur, who was with the deputy, a witness called for the plaintiff, testified that, when they were about to leave, the plaintiff stated: "Now, remember, I don't accept this car. You fellows leave it at your own risk." There is no dispute that the car, when it was returned, was in the same condition as when taken away, and that it was left in the barn uninjured and undamaged. There it ever since remained. There is no claim of any injury or loss suffered by the plaintiff during its detention, or that his

lien was in any particular impaired, or that he otherwise suffered any loss.

We think the finding is justified that the plaintiff, at the time of the levy, notified the deputies that he held a mortgage on the automobile. The finding that it was returned without the knowledge of the plaintiff and was "abandoned, not being left in the possession of any one," is unsupported. The finding that the plaintiff did not demand the return of it and did not consent to its return is supported. The evidence shows it was with plaintiff's knowledge, but against his will and protest, returned to him and was with his assistance placed in the barn and there left either in his possession or that of his son-in-law. At any rate, it was left where taken and where the plaintiff had the same dominion and control over it as when levied on and seized. So whatever possession or right of possession he had was fully restored to him. The serious question, therefore, is that of damages.

The judgment was rendered on the theory of a conversion, and the damages measured by the value of the automobile at the time of the conversion found to be $250, to which was added legal interest.

By statute it is provided that, before mortgaged personal property may be taken on attachment, "the officer must pay or tender the mortgagee the amount of the mortgage debt or deposit the amount thereof with the county recorder." The taking of the automobile without paying or tendering to the plaintiff the amount of the mortgage debt, or depositing the amount thereof with the county recorder, of course, was wrongful. In law it constituted a conversion. But the defendant, by reason of the wrongful levy and seizure, incurred no legal obligation or liability to personally pay the mortgage debt. While the statute requires payment or tender to the mortgagee of the debt before mortgaged personal property is attached, yet, if it is levied on and seized without payment or tender, the levy is unauthorized, the seizure a trespass, and the officer liable, not for a breach of legal obligation to pay the debt, but for tort and the damages

sustained by reason of it. (*Irwin v. McDowell,* 91 Cal. 119, 27 Pac. 601; *Keith v. Haggart,* 4 Dak. 438, 33 N. W. 465.)

And though the plaintiff, as found by the court, was not in the possession of the automobile, and though it be conceded he had such an interest in the property and, as against the officer, such a right of possession as to entitle him to maintain an action for conversion, yet, under the facts and circumstances of the case, what was the measure of his damages? He was not the owner of the property and could not vindicate the rights of the mortgagor, who was the owner. His interest was special. That he had a right to protect and defend. Now ordinarily in conversion, when the property is not returned, the measure of damages is the value of the property at the time of the conversion. But that is not so when the property has been returned and received by the plaintiff. In such case, the return to, and acceptance of the property by, the plaintiff, though not a bar to the action, nevertheless goes in mitigation of damages, for the plaintiff cannot have the full value of the property converted and at the same time have the property itself. The authorities very generally hold that in an action for conversion a return of the property to the plaintiff, and an acceptance of it by him, may be shown in mitigation of damages, if the property when returned was in the same condition as when taken, and if the plaintiff suffered no special damages. But it is urged, and as found by the court, the plaintiff "did not consent" to a return of the property; and for that reason it is argued the return, or offer to return, does not go and cannot be considered in mitigation of damages. There are authorities to that effect. (*Carpenter v. Dresser,* 72 Me. 377, 39 Am. Rep. 337; *Munier v. Zachary,* 138 Iowa, 219, 114 N. W. 525, 18 L. R. A. (N. S.) 572, 16 Ann. Cas. 526; *Railroad Co. v. O'Donnell,* 49 Ohio St. 489, 32 N. E. 476; *Kieffer v. Smith,* 16 S. D. 433, 93 N. W. 645.) They proceed on the theory that, when a cause of action has once accrued to the owner of chattels on account of their conversion by another, the latter can neither destroy it nor restore the property in mitigation of damages without the assent of the

former. There are other cases to the same effect, but in some of them the offer to return was not made until after suit, or where there was a deterioration of the property, or special damages claimed, or where the conversion was willful, or malicious, or oppressive. On the other hand, there is good authority to sustain the proposition that in an action for conversion, when not willful, malicious, or oppressive, the return of the property uninjured and undamaged, before suit, and placed in statu quo, though against the will and without the consent of the plaintiff but with his knowledge or notice to him, may be shown and considered, not in bar of the action, but in mitigation of damages; and, where special damages are neither claimed nor shown, the plaintiff in such case can only recover nominal damages.

In 2 Cobbey on Chattel Mortgages, section 732, the author says:

"If an officer, under process, seizes personal property mortgaged, without paying or tendering the amount due, the detriment proximately caused by the seizure is not the value of the property but the amount of the mortgage debt; and this detriment the officer, in seizing the property, assumes to make good. If an officer, as soon as he finds that the property levied on is claimed by a third party, whose title he does not wish to dispute, returns the property and leaves it on the premises where found and thereafter asserts no claim to its possession, the damages recovered for the taking should be merely nominal, unless it is shown that plaintiff, a mortgagee, has suffered special damages."

In 4 Suth, on Damages (3d Ed.) section 1140, that author says:

"If there was a willful taking of the property, or a willful refusal to surrender it on demand, or it has suffered an injury or deterioration in value, the defendant cannot compel the plaintiff to accept it in mitigation of damages. This rule rests on the doctrine that a wrongdoer cannot take from the person wronged his right to pursue any of the legal remedies open to him. But if the property came lawfully into the defendant's possession, and his refusal to surrender was qualified, or the conversion technical only, or without intentional wrong, and it remains strictly in the same condition as before the conversion, the defendant may compel the plaintiff to accept it in mitigation."

See, also, 1139 and 1141.

The rule as stated in 38 Cyc. 2060, is:

"After an act of conversion a return of the property by the wrongdoer, or an offer to return it, although provable in mitigation of damages, will not bar the cause of action in trover."

In the case of *Warder v. Baldwin,* 51 Wis. 450, 8 N. W. 257, it was held:

"If an officer, as soon as he finds that he has by mistake levied upon the wrong property, tenders it back to the persons·from whose possession he took it, leaves it on their premises, and thereafter asserts no claim to its possession, the damages recovered for the taking should be merely nominal, unless it is shown that the plaintiffs have suffered, by reason of the seizure, special damages apart from the mere value of the property. In such a case, if no tender be made before the commencement of the action for the taking, etc., yet if the officer then offers to return the property and pay the costs, and it appears that the seizure was made in good faith, and that the property, at the time of such offer, was in as good condition as when taken, the damages should still be merely nominal, except as stated in the foregoing proposition."

The same conclusion was reached by that court in *Churchill v. Welsh,* 47 Wis. 39, 1 N. W. 398, and the same doctrine affirmed in *Farr v. State Bank of Phillips,* 87 Wis. 223, 58 N. W. 377, 41 Am. St. Rep. 40.

In the case of *Ward v. Moffelt,* 38 Mo. App. 395, it was said:

"If the conversion was technical only, or without willful wrong on his part, and the property remained entirely *in statu quo,* the defendant may compel the plaintiff to accept it in mitigation of damages (citing cases). Where such a state of facts exists, it is plain that evidence that the defendant has tendered the property to the plaintiff is admissible in mitigation of damages; and no reason is perceived why, for the purpose of showing good faith and mitigating the damages, the defendant should not, in such a case, be permitted to show in evidence his continued readiness to restore the property to the plaintiff."

The same rule is announced by that court in *Gilbert & Miller v. Peck,* 43 Mo. App. 577, and in *Burge ex rel. v. Hunter,* 93 Mo. App. 639, 67 S. W. 697.

In the case of *Yale v. Saunders,* 16 Vt. 243, it also was held:

"If property, of the conversion of which the defendant in an action of trover has been technically guilty, be shown to have subsequently gone into the possession and under the control of the plaintiff, who sues in trover, and to his use, this will go in mitigation of damages, though no agreement be shown, on the part of the plaintiff, that he would receive it, but not in bar of the action."

The same principle is announced by that court in *Rutland & W. R. Co. v. Bank of Middlebury,* 32 Vt. 639.

So in *Bigelow Co. v. Heintze,* 53 N. J. Law, 69, 21 Atl. 109, it was held:

"The return of the property after conversion is no bar to the action but is admissible in mitigation of damages. In such a case the plaintiff will not recover the value of the goods but the damages he has sustained by the wrongful act, which was, the conversion. Where the taking was willful, or the property after the conversion had suffered injury or deteriorated in value, the defendant cannot compel the plaintiff to accept the property in mitigation of damages. But if the property came lawfully into the defendant's possession, or the conversion was technical only, and the property remains in the same condition as before the conversion, the defendant may compel the plaintiff to accept it in mitigation of damages."

And in the case of *Sutton v. Railway Co.,* 99 Minn. 376, 109 N. W. 815, the court said:

"In cases of merely technical conversion, where the property was returned in the same condition as before the unauthorized act, not only when the owner voluntarily received back the goods but also when he took them back against his will, the plaintiff will be entitled to only nominal damages and costs. To award more would be to exceed compensation under circumstances not justifying any other measure of damages; to award less would be to justify. a wrong."

To the same effect are also the following: *Coburn v. Watson,* 48 Neb. 257, 67 N. W. 171; *McGraw v. Sampliner,* 107 Mich. 141, 64 N. W. 1060; *Barrelett v. Bellgard,* 71 Ill. 280; *Stephenson v. Wright,* 111 Ala. 579, 20 South. 622; *Western L. & C. Co. v. Hall* (C. C.) 33 Fed 236; *Whitaker*

*v. Houghton,* 86 Pa. 48. This is also the rule in England. (*Fisher v. Prince,* 3 Burr. 1363; *Hiort v. London & N. W. Ry. Co.,* 4 Exch. Div. 188.)

In the last case Lord Justice Bramwell said:

"A return of the goods undoubtedly might be shown to reduce the damages in the case of a conversion, not only where the owner voluntarily received back the goods, but where he took them back against his will."

Lord Justice Thesiger remarked:

"No doubt the action of trover has been surrounded by technicalities, which may have in some instances worked injustice. I think, however, of late the tendency of the courts has been to treat this action with more common sense than it had previously been treated. Just as in other actions of tort it is held that a person to whom a wrong has been done can only recover his damages which flow from the wrong, so in an action of trover it is the tendency of the courts to apply the same rule. . . . A plaintiff claiming goods is assumed, if he recover the full value, to be in a position to convey or transfer to the defendant the dominion over and property in the goods, so far as regards any act of his own. If that be so, how stands the matter? There was an act of conversion which gave the plaintiffs a right of action, and subsequent to that act of conversion there was a valid transfer of the property in the goods from the plaintiffs to some other person, who was entitled to hold the goods and bound to pay their price to the plaintiffs; then the plaintiffs clearly had no dominion over those goods, no property in them which they were able to transfer to the defendants upon the judgment being satisfied. . . . It appears to me, therefore, to follow from the ordinary rules which are applicable to actions of trover, that the plaintiffs are entitled to recover damages only for the deprivation of their control over the goods from the time of the unauthorized delivery; but, inasmuch as it is admitted that during that period the plaintiffs sustained no damage, they can only recover nominal damages."

Mr. Justice Seabury, in respect of this, in the case of *Johnson v. Marks,* 66 Misc. Rep. 153, 121 N. Y. Supp. 294 said:

"Rules for estimating damages are not intended as dogmas from which no departure can ever be made. Like rules in reference to nearly all other matters, they are subject to exception and are to be used so as to give effect to the purpose they were intended to serve rather than to be applied as stereotyped formulæ, without

regard to whether they result in justice or injustice. The aim of the law in awarding damages in actions of tort 'is to give the injured party a full indemnity, and no more, unless the injury has been willful or malicious.' "

We believe this to be the weight of modern authority and a doctrine well founded in law and upon reason.

On the undisputed evidence the conversion here was but technical. It constitutes what Lord Justice Bramwell, in *Hiort v. London & N. W. Ry. Co., supra,* denominated a conversion in law as distinguished from a conversion in fact. It was not willful or malicious. The levy was made and the property seized in good faith. It was not done oppressively. The property at the time of the levy, was unused and was stored and had been stored for several months prior thereto. It was retained by the sheriff but five days, when he released the attachment and returned the property in the same condition as when taken. It was returned and tendered to the plaintiff and left in the barn where taken, and there it ever since remained subject to his control and dominion. True, he refused to accept it. He evidently, under advice of counsel, preferred, if he could, to make an involuntary sale of it to the sheriff or compel him to pay the whole of the mortgage debt. He undoubtedly is entitled to recover all the damages, both general and special, sustained by him in consequence of the wrongful levy and of the conversion. He ought to be made whole for the loss suffered by him in consequence of that wrong. What was that loss? In what way was he injured or damaged? He neither alleged nor proved anything in that respect. His complaint does not proceed on that theory. It proceeds on the theory that the sheriff, by reason of the wrongful levy, became liable to him for the full amount of the mortgage debt; and the court proceeded on the theory that the sheriff was liable to the extent of the full value of the property, if that, as it was found to be, was less than the mortgage debt, and this notwithstanding plaintiff cannot, if the judgment be satisfied, convey title to the defendant, and under the form of the judgment it is doubtful if he even could be compelled to surrender and transfer his lien to the

defendant, or any part thereof. He at least has made no such offer. His whole course of conduct indicates an assertion of his lien notwithstanding the judgment. And, though the judgment be paid, may he not by foreclosure proceed against the mortgagor and subject the property in satisfaction of the debt secured by the mortgage, if not for the whole amount, at least for the difference between the debt and the amount received by him on the judgment? Then how about the mortgagor, a stranger to these proceedings? If the judgment be paid, what right, as against him has the sheriff to the property, or, even as between the mortgagor and the mortgagee, what right has the former to offset the judgment against his obligation to the latter? And so, if this judgment be paid, in the language of Lord Justice Thesiger, "how stands the matter?" But, aside from those considerations, it is manifest the plaintiff sustained no such loss as was found. The property was not deteriorated and was restored *in statu quo.* His lien was not impaired nor his rights thereunder abridged or hindered. Notwithstanding the conversion, five days thereafter, and at the commencement of this action, he had everything he had when the levy was made. To permit this judgment to stand is to award the plaintiff something for nothing. On the record, we think all that he was entitled to recover was nominal damages and costs.

The judgment of the court below is therefore reversed, and the cause remanded for a new trial. Costs to appellant.

McCARTY, C. J., and FRICK, J., concur.